**FRIENDLY SOCIETY OF ENGRAVERS AND SKETCHMAKERS,**
Appellant,

v.

**CALICO ENGRAVING COMPANY,**
Appellee.

No. 7234.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 5, 1956.

Decided Nov. 7, 1956.

Isadore S. Bernstein, Columbia, S. C., and Carl F. Nitto, Passaic, N. J., for appellant.

N. Heyward Clarkson, Jr., and Thomas C. Bradley, Jr., Columbia, S. C. (Smith & Bradley, Columbia, S. C., on brief), for appellee.

Before PARKER, Chief Judge, SOBELOFF, Circuit Judge, and BRYAN, District Judge.

PARKER, Chief Judge.

This is an appeal from an order dismissing an action instituted by a labor union against an employer to recover damages on account of anti-union activity on the part of the employer. The dismissal was based upon the failure of the complaint to state a claim upon which relief could be granted.

The complaint sets forth two causes of action. The first alleges that plaintiff is

an incorporated labor union, a number of whose members have been employed by defendant, a manufacturing corporation, and that plaintiff has been certified as the sole bargaining representative of the employees of the defendant. The gist of the claim for damages is contained in paragraphs 6 and 7 of the first cause of action which are as follows:

"6. That since the certification by the plaintiff as the sole bargaining representative of its employees in the defendant's plant as aforesaid, the defendant, its agents and officers, have wilfully and maliciously interfered with the plaintiff's contracts and relationships with its members employed by defendant and have on numerous occasions stated to the said employees that they wanted the union to leave the plant and that they would prefer that the employees leave the union, and have made numerous threats and promises to the said members in an effort to compel them to terminate their membership in the union and to expel the plaintiff from the said plant, and have failed and refused to recognize plaintiff as the sole bargaining representative of its the said plant, and have failed and refused to recognize employees in the defendant's plant pursuant to the said certification by the National Labor Relations Board; that the acts aforesaid were in violation of plaintiff's rights as a labor union and constitute a wrongful and unlawful interference with the plaintiff in its relations and contracts with its members, and the same constitute unfair labor practices in violation of the Labor Management Relations Act of 1947.

"7. That by reason of and as a result of the aforesaid wilful and malicious acts and conduct of the defendant and unlawful interference with the plaintiff in its relations to its members, the said employees became insecure in their jobs and were compelled to resign from their employment and have lost, or are about to lose, their membership in the plaintiff society, as a result of which the plaintiff lost its recognition as the sole bargaining representative of the employees in the defendant's plant, lost numerous members and has suffered extreme humiliation and loss of prestige as a labor organization and has been deprived of membership dues and other benefits accruing from its membership and the plaintiff has been otherwise damaged, all to its damage in the sum of One Hundred Thousand ($100,000.00) Dollars actual and punitive damages."

The second cause of action alleges that defendant's actions constitute a violation of the right to work statute of the State of South Carolina. Sections 40–46 et seq. 1954 Supplement to the Code of Laws of South Carolina, which declares it to be the public policy of the state "that the right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization."

■■ We agree with the court below that neither cause of action states a claim upon which plaintiff can recover. As to the first cause of action, plaintiff's contention is that it is entitled to recover for malicious interference with contract, under the doctrine of such cases as Lumley v. Gye 2 El. and Bl. 216, 118 Eng.Rep. 749; Chitwood v. McMillan 189 S.C. 262, 1 S.E.2d 162; and Keels v. Powell, 207 S.C. 97, 34 S.E.2d 482. We do not think, however, that the action of an employer in seeking to eliminate union membership on the part of his employees falls within the ambit of these cases. Certainly there was no action at common law for such anti-union activity on the part of the employer, who might require of his employees as a condition of employment that they not be members of a labor union. See Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 38 S. Ct. 65, 62 L.Ed. 260; Coppage v. State of Kansas, 236 U.S. 1, 35 S.Ct. 240, 59 L.Ed. 441; Adair v. United States, 208

U.S. 161, 28 S.Ct. 277, 52 L.Ed. 436. This was changed by the National Labor Relations Act amended by the Labor Management Relations Act, 29 U.S.C.A. 160 et seq., which recognized the rights of laboring men to organize and to bargain collectively and made it the duty of the employer to recognize such rights and to bargain with the duly chosen representative of the employees. The National Labor Relations Act and the Labor Management Relations Act, however, provided exclusive remedies for the protection of the rights thus recognized; and the parties complaining of the violation of such rights may not go into court for their vindication but must pursue the remedies that the acts provide. Amazon Cotton Mill Co. v. Textile Workers Union of America, 4 Cir., 167 F.2d 183, 186. As said by this court in the case cited:

> "It is perfectly clear, both from the history of the National Labor Relations Act and from the decisions rendered thereunder, that the purpose of that act was 'to establish a single paramount administrative or quasi-judicial authority in connection with the development of federal American law regarding collective bargaining'; that the only rights made enforceable by the act were those determined by the National Labor Relations Board to exist under the facts of each case; and that the federal trial courts were without jurisdiction to redress by injunction or otherwise the unfair labor practices which it defined. H.Rep. No. 447, 74th Cong. 1st Sess. p. 24; S.Rep. No. 573, 74th Cong. 1st Sess. p. 15; Agwilines, Inc., v. N. L. R. B., 5 Cir., 87 F.2d 146, 150, 151; Blankenship v. Kurfman, 7 Cir., 96 F.2d 450; Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Newport News Shipbuilding & Dry Dock Co. v. Schauffler, 303 U.S. 54, 58, 58 S.Ct. 466, 82 L.Ed. 646; Amalgamated Utility Workers v. Consolidated Edison Co.,

309 U.S. 261, 265, 266, 60 S.Ct. 561, 84 L.Ed. 738; National Licorice Co. v. N. L. R. B., 309 U.S. 350, 362, 365, 60 S.Ct. 569, 84 L.Ed. 799. * * * For the same reason that plaintiff may not maintain the suit for injunction to restrain the unfair labor practice, it may not maintain the action to recover damages on account thereof."

In Garner v. Teamsters Union, 346 U.S. 485, 74 S.Ct. 161, 165, 98 L.Ed. 228, the Supreme Court dealt with the granting of an injunction to restrain peaceful picketing in aid of an organizing effort by the union. In holding that the National Labor Relations Board had exclusive jurisdiction with respect to the matter and that the courts were without jurisdiction in the premises, the court said:

> "Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. * * * A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law. The same reasoning which prohibits federal courts from intervening in such cases, except by way of review or on application of the federal Board, precludes state courts from doing so."

In Weber v. Anhauser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 487, 99 L.Ed. 546, the Supreme Court held that a state court might not grant an injunction on the basis of state law to restrain certain unfair labor practices. In the course of the opinion the court said: "It is perfectly clear that had respondent gone first to a federal court instead of the state court, the federal court would have declined jurisdiction, at least as to the unfair labor practices, on the ground that exclusive primary jurisdiction was in the Board. As pointed out in the Garner case, 346 U.S. at page 491, 74 S.Ct. at page 166, the same considerations apply to the state courts." After distinguishing the case of United Construction Workers, Affiliated with United Mine Workers of America v. Laburnum, infra, and adverting to situations in which jurisdiction might properly be exercised by state tribunals, the court said: "But where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance."

See also Bowen v. Bricklayers, Masons & Plasterers Int. Union, 225 S.C. 29, 80 S.E.2d 343, in which the Supreme Court of South Carolina said that the jurisdiction of the labor board would be exclusive in a case such as this where interstate commerce is involved.

Where Congress intended that a right to sue in the courts should exist with respect to any of the rights created by the act, it made express provision to that effect, as in the case of injuries resulting from boycotts or other unlawful combinations. See 29 U.S.C.A. § 187(a) and (b), construed and applied by this court in United Mine Workers of America v. Patton, 4 Cir., 211 F.2d 742, 47 A.L.R.2d 850.

United Construction Workers Affiliated with United Mine Workers of America v. Laburnum Construction Company, 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025, is not to the contrary. That case dealt with the right to recover damages on account of a common law tort actionable in the absence of statute, not a mere unfair labor practice with respect to which no action at common law existed. Of course tortious action such as assault and battery does not cease to be actionable because it may constitute an unfair labor practice; but it does not follow that an unfair labor practice is actionable at law because forbidden by statute. As pointed out above, where the statute which forbids it provides at the same time a remedy for its redress without providing a right of action in the courts, the remedy so provided is exclusive. To allow actions at law to be maintained with respect to unfair labor practices, which do not give rise to actions at common law, would not only burden the courts with a flood of unnecessary litigation, but would hamper the National Labor Relations Board in the performance of the duties confided to it and would breed endless confusion in labor litigation. Nothing of the sort was intended by Congress; and for the courts to sanction such litigation would retard and not advance the purposes for which the National Labor Relations Act came into being.

■■ For like reason, we think that the complaint states no claim upon which relief may be granted under the South Carolina "right to work" act. That statute was clearly intended to preserve the right of laboring men to employment notwithstanding closed shop agreements entered into between employers and labor unions, not to confer upon labor unions the right to recover damages from employers because of unfair labor practices. If, however, it be construed as attempting to confer such right upon labor unions, it is clear that the attempt must fail in cases such as this, where exclusive jurisdiction with respect to the conduct involved has been vested by Congress in

the National Labor Relations Board. Weber v. Anhauser-Busch, Inc., supra, 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546; Garner v. Teamsters Union, supra, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228.

Affirmed.