**GREGORY ELECTRIC COMPANY, Inc.,**
**Plaintiff,**

v.

**CUSTODIS CONSTRUCTION COMPANY, Inc., Defendant.**

**Civ. A. No. 69–307.**

United States District Court,
D. South Carolina,
Charleston Division.

April 17, 1970.

Harold W. Jacobs, of Cooper, Gary, Nexsen & Pruet, Columbia, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

This action was commenced by plaintiff, a South Carolina corporation with its principal place of business in said state, against defendant, a Delaware corporation with its principal place of business in Illinois, in the Court of Common Pleas of Berkeley County, South Carolina. The prayer of the complaint was for Two Hundred Thousand and No/100 ($200,000.00) Dollars, actual and punitive damages. This court having original jurisdiction of the action under the provisions of Title 28, United States Code, Section 1332, defendant removed the case to it pursuant to the authority of Title 28, United States Code, Section 1441(a).

The complaint alleges that on January 22, 1969, defendant contracted with it to install aviation obstruction lights on two chimneys defendant was building at the Jeffries Steam Plant (Santee Cooper) in Berkeley County, South Carolina for an agreed sum of $3,826.00 per chimney, or a total contract price of $7,652.00. The core of the allegations claim plaintiff sent its employees to begin work as contracted and that defendant refused to allow plaintiff's employees on the job site. In this regard plaintiff alleges in paragraphs 7, 8 and 9 of its complaint as follows:

7. That plaintiff is informed and believes and therefore alleges that at points of time between January 27, 1969, and January 30, 1969, certain agents, servants, and employees of defendant met with various representatives of labor unions and organizations whose members were also engaged in working on the said Jeffries Steam Plant, the precise labor unions being unknown but collectively operating under the style name of the Charleston Building Trades Council, and as a result of such meetings the defendant

William H. Smith, Jr., S. C., and Ellison D. Smith, IV, of Smith & Smith, Columbia, S. C., for plaintiff.

agreed to refuse to permit any employee of plaintiff to enter upon such work because plaintiff's employees were not members of a labor union or organization.

8. That because plaintiff's employees were not members of a labor union, and pursuant to Section 40-46 *et seq.*, South Carolina Code of Laws, 1962, commonly called the "Right to Work Law", specifically Section 40-46.1, plaintiff could not require its employees to become such members, the defendant, negligently, recklessly, wilfully, wantonly and maliciously refused to permit plaintiff and plaintiff's employees to continue its work upon the said Jeffries Steam Plant pursuant to the terms of plaintiff's contract with defendant, thereby denying to plaintiff's employees the right to work because of non-membership in a labor union, in violation of Section 40-46 *et seq.*, Code of Laws of South Carolina, 1962, and through such unlawful denial to plaintiff's employees, depriving it of the benefits of its said contract.

9. That plaintiff is entitled to damages both actual and punitive for the wrongful refusal of defendant to permit plaintiff's non-union employees and plaintiff to perform work agreed upon at the said Jeffries Steam Plant and attorneys' fees for its attorneys in bringing this action.

Defendant made a timely motion to strike the above quoted paragraphs on the grounds that "the Right to Work Law is not applicable and punitive damages and attorneys' fees are not recoverable in South Carolina in the circumstances alleged in the Complaint and such paragraphs and words are immaterial, impertinent and scandalous."

At the hearing on the motion, plaintiff's counsel conceded that plaintiff had no action against defendant under the South Carolina Right to Work Law. Counsel, nevertheless, contends that the Right to Work Law makes the type of conduct of which defendant is accused

tortious and that, therefore, a tort action may be maintained for defendant's alleged breach of its contract with plaintiff.

In order for plaintiff to prevail upon this motion, two questions must be answered affirmatively. First, does there exist in South Carolina a cause of action sounding in tort arising from acts which constitute a violation of Right to Work Law Title 40, Section 46 et seq., South Carolina Code, 1962, Annotated? Stated alternatively, it must be determined whether the conduct proscribed by the relevant sections constitutes a common law tort in this state. Second, if such a right of action exists, does it extend to, or can it be tortious to, one occupying a position such as this plaintiff?

■ It seems clear that the conduct alleged to have transpired here is violative of Section 40-46 et seq., Code of Laws of South Carolina, 1962, and is tortious under South Carolina law.

The preamble of the "Right to Work Law" announces emphatically the public policy of South Carolina that union membership should have no relevance upon a person's "right to work": "It is hereby declared to be the public policy of this State that the right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization." Section 46 of Title 40, Code of Laws of South Carolina, 1962. Subsequent sections of the Right to Work Law make it illegal to deny a person employment on the grounds of union non-membership. Section 40-46.8 provides remedy for one injured as a result of a violation of the Act. It states, in part:

* * * [t]he court, in any such proceedings may grant and issue such restraining, and other, orders as may be appropriate * * * and may determine and award, as justice may require, any actual damages, costs and attorneys' fees which have been sustained or incurred by any party to the action, and, in the discretion of the

court or jury, punitive damages in addition to the actual damages.

In Branham v. Miller Electric Co., 237 S.C. 540, 118 S.E.2d 167 (1961), the South Carolina Supreme Court considered the "Right to Work Law." Plaintiff's (a non-union laborer) employment was terminated because he was not in good standing with the union; the union refused to approve him. Plaintiff instituted suit against the employer. The defendant demurred to the complaint. A ground of demurrer was that the complaint "failed to allege violation of any duty or obligation owed to plaintiff by the defendant company." The trial court sustained the demurrer and the South Carolina Supreme Court reversed. In reaching a decision, the court discussed the public policy underlying the Right to Work Law and the evils which it was intended to remedy:

Here, the first section of the statute expressly declares it to be the public policy of this state that 'the right of persons to work shall not be denied or abridged on account of membership or non-membership' in a labor union. But viewing that section in conjunction with the others before mentioned, particularly Section 2, it seems to us quite clear that the evils to which the legislative intent and the remedial purpose of the statute were directed were: (1) union control of employment on the one hand; and (2) employer boycott of, or insistence upon, union labor on the other.

In *Branham* defendant insisted that it owed no duty to plaintiff. In its opinion the appellate court recognized indirectly a legal obligation upon defendant to afford employment without consideration of union affiliation.

One year later the South Carolina Supreme Court had before it Kimbrell v. Jolog Sportswear, 239 S.C. 415, 123 S.E. 2d 524 (1962). There plaintiffs instituted suit against their employer, alleging "tortious withholding" of wages due them, and conduct which, under the circumstances alleged, was also pro-

scribed by the Right to Work Law. Defendant's demurrer was sustained by the trial court and that ruling was reversed upon appeal to the Supreme Court. In its opinion the Supreme Court noted, "[t]he complaint is based upon an alleged criminal and tortious violation of the rights of plaintiff for which the State law affords a remedy * * *." In reaching its conclusion that plaintiff's complaint stated a cause of action, the court said: "[The Right to Work Law] affords a remedy for the recovery of both actual and punitive damages. Where, as here, the tortious conduct is of compelling state interest affecting the public welfare and security of its citizens, the state remedy is not excluded by the National Labor Relations Act."

Upon reading of the Right to Work Law and the cases arising thereunder, it is clear that South Carolina imposes legal obligations upon employers, the breach of which is tortious. The obligation created affords the right to working men to work without regard to union affiliation. Those obligations arose by operation of law and their breach gives rise to a cause of action in tort.

Having determined that a right of action sounding in tort may arise from conduct violative of the Right to Work Law, this court must now determine whether the legal obligations of employers, created by the Act, and the public policy underlying it, extend to plaintiff in the case at bar. This court concludes that Custodis' obligations extended to Gregory and the alleged breach of contract brought about by union affiliation gives rise to an action in tort.

It has often been said that the Right to Work statute is intended to preserve the right of laboring men to employment notwithstanding closed shop or similar agreements. As noted above, both the statute, and the underlying public policy which it sought to effectuate, are designed to eliminate union affiliation as a criterion for employment. Friendly Society of Engravers & Sketch-

makers v. Calico Engraving Co., 238 F.2d 521 (4th Cir. 1956); Branham v. Miller Electric Co., supra; Section 40–46, Code of Laws of South Carolina, 1962. The necessary corollary of these principles is a legal obligation upon the part of employers to abstain from terminating employment on grounds of non-affiliation with unions. Here the breach of this obligation gives rise to an action in tort.

It is clear that if Gregory's employees were directly employed by Custodis and Custodis terminated their employment due to absence of union affiliation, those employees would have a cause of action in tort against Custodis resulting from breach of employment contracts. As a sub-contractor, Gregory stood in a legal position similar to that of an employee. Gregory entered into a contract with Custodis to perform certain services, to wit, the installation of aviation obstruction lights on two chimneys. Custodis was clearly an employer of Gregory. Custodis is alleged to have terminated the contract and thus the employment of Gregory as a sub-contractor for reasons involving union affiliation, or the absence of affiliation. In Meddin v. Southern Ry., 218 S.C. 155, 165–166, 62 S.E.2d 109 (1950), the South Carolina court said:

> Where a contract creates a certain relationship between the parties, and certain legal duties arise by operation of the law, irrespective of the contract, because of this relationship, then the breach of such duties warrants an action in tort.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> In the case at bar the complaint clearly alleges the violation of the tariff rules and regulations by Dixie Home Stores as a concurring and proximate cause of the plaintiffs' injuries, that is to say, the negligent and willful failure to perform certain legal duties, not arising out of the particular contract between the plaintiff and this defendant, but arising out of the relationship created by the contract \* \* \*. Surely the breach of

such duties created in the public interest is tortious.

The relationship created by the contract (similar to an employment contract) between Custodis and Gregory, created such a relationship between the two companies that Custodis' legal obligation to refrain from conduct proscribed by the Right to Work Law extended to Gregory.

It is clear that plaintiff here has a right of action in contract. Nevertheless, a right of action in tort exists independently of the contract between the parties and its existence was created by operation of the law and arose because of the relationship of the parties. At 86 C.J.S. Torts § 3, the right of action in tort, independent of any contractual relationship, which arises from the relationship of the parties by operation of the law is discussed:

> Although torts have been defined as wrongs independent of contract, and have been said, as a general rule, to be wrongs wholly irrespective of contract, nevertheless, causes of action need not be completely disconnected from contracts in order to constitute torts. Indeed, the existence of a contract may be one of the circumstances requisite to give to particular conduct the character of a breach of duty and thus to make it tortious. Thus, under many kinds of agreements, there are not only the contractual duties brought into being by the will of the parties, but there are also duties prescribed by law as incidents of the relation or status which the parties have created by their agreement.
>
> Where there is such a contract to which are attached duties of a dual character, some with a consensual basis and others imposed by law on the particular relation which the parties have assumed, \* \* \* a breach of the latter class constitutes a tort. It is not essential to tort connected with a contract, however, that the duty violated shall have been imposed purely as an incident to a particular relation

created by contract; a mere contract obligation may establish no relation out of which a separate or specific legal duty arises, and yet extraneous circumstances and conditions in connection with it may establish such a relation as to make its performance a legal duty, and its breach a tort. In such case, it is immaterial that some of the series of acts, which in combination with the contract give rise to the duty and render the breach a tort, are in themselves lawful and innocent.

Adopting the reasoning quoted, and feeling that the plaintiff should have his day in court, this court refuses the motion to strike. This court finds it unnecessary to pass on punitive damages and attorney fees. The trial judge will be in best position to make such judgments. This order is not intended to preempt the trial judge in any decision.

The motion is refused.

And it is so ordered.