2003 OK 110

LOCAL 514 TRANSPORT WORKERS UNION OF AMERICA, Local 627 International Union of Operating Engineers, Local Lodge 898 International Association of Machinists & Aerospace Workers, Local 584 International Association of Bridge, Structural, Ornamental & Reinforcing Iron Workers, Local 916 American Federation of Government Employees, Local 1358 National Association of Letter Carriers, Local 1558 International Union, United Auto, Aerospace & Agricultural Implement Workers of America, Oklahoma State AFL–CIO and Edwards Pipeline Services, Inc., Plaintiffs–Appellants,

v.

Frank KEATING, Governor of the State of Oklahoma, Oklahomans for Jobs for Justice, Inc., Kent Duvall, Michelle McKenzie, and Stephen Weese, Defendants–Appellees,

Eastern Oklahoma Building & Construction Trades Council, Amicus Curiae.

No. 99,178.

Supreme Court of Oklahoma.

Dec. 16, 2003.

Steven R. Hickman, James E. Frasier, Tulsa, OK, and Laurence E. Gold, Washington, DC, for Plaintiffs–Appellants.

D. Kent Meyers, Mary H. Tolbert, Crowe & Dunlevy, and John N. Hermes, McAfee &

Taft, Oklahoma City, for Defendants–Appellees, Frank Keating, Governor of the State of Oklahoma and Oklahomans for Jobs for Justice, Inc.

Kermit M. Milburn, Henson, Henson, Henson, Marshall & Milburn, Shawnee, OK, and John R. Martin, Springfield, VA, for Defendants–Appellees, Kent Duvall, Michelle McKenzie, and Stephen Weese.

James C. Thomas, Tulsa, OK, for Amicus Curiae, Eastern Oklahoma Building & Construction Trades Council.

WATT, C.J.

¶ 1 The United States Court of Appeals for the Tenth Circuit has certified questions of state law to this Court under the Oklahoma Uniform Certification of Questions of State Law Act, 20 O.S.2001 §§ 1601, et seq. The federal court asks:

1. Is severability analysis required in light of the preemption of [Okla. Const.] article XXIII, § 1A(B)(1), § 1A(C), and § 1A(E) (insofar as it enforces § 1A(B)(1), § 1A(B)(5), and § 1A(C)) as to workers covered by the NLRA, as opposed to the 'invalidation' of those provisions?

2. If severability analysis is appropriate, are § 1A(B)(1), § 1A(B)(5), § 1A(C), and § 1A(E) (insofar as it enforces § 1A(B)(1), § 1A(B)(5), and § 1A(C)) severable from the non-preempted portions of § 1A?

We answer "no" to Question 1. Thus, it is unnecessary to answer Question 2.

## INTRODUCTION

¶ 2 In September 2001 the people of Oklahoma approved at a special election State Question 695, a referendum submitted to them by a Joint Resolution of the Oklahoma Legislature. Upon its approval by the people, SQ 695 immediately amended the Oklahoma Constitution by adding Art. 23, § 1A.[1]

---

1. That amendment, Okla. Const., Art. 23, § 1A provides:

**§ 1A. Participation in labor organization as condition of employment prohibited**

A. As used in this section, "labor organization" means any organization of any kind, or agency or employee representation committee or union, that exists for the purpose, in whole or in part, of dealing with employers concerning wages, rates of pay, hours of work, other conditions of employment, or other forms of compensation.

B. No person shall be required, as a condition of employment or continuation of employment, to:

This new provision is usually either called the "right to work law" or the "right to work amendment."

¶ 3 In November 2001, several labor organizations and a pipeline company sued then Oklahoma Governor Frank Keating in the United States District Court for the Eastern District of Oklahoma seeking a declaration that the right to work law was unconstitutional. Later, Oklahomans for Jobs and Justice, a supporter of right to work, and three individual Oklahoma citizens, who are represented by the National Right to Work Legal Defense and Education Foundation, intervened as defendants.

¶ 4 In the trial court the parties agreed that no discovery would be necessary to resolve the issues and that submission of those issues via cross-motions for summary judgment would be appropriate. The trial court entered an order and final judgment on June 5, 2002, *Local 514, Transport Workers of America, et al. v. Keating, et al.*, 212 F.Supp.2d 1319 (E.D.Okla.2002). In its order, the trial court rejected the plaintiffs' contention that the right to work law should be declared invalid because it was substantially preempted by the Supremacy Clause of the United States Constitution, Art. 6, Cl. 2, and also rejected the plaintiffs' contention that the amendment violated several provisions of the Oklahoma Constitution. Instead, the trial court held, "Plaintiffs' federal constitutional attack against Oklahoma's right-to-work law has no merit and must be rejected."

The trial court declined to exercise supplemental jurisdiction over the remaining state law issues raised by plaintiffs.

¶ 5 The trial court held that the right to work amendment did not apply to employees covered by the Railway Labor Act,[2] the Civil Service Reform Act,[3] or the Postal Reorganization Act;[4] nor did it have any application to federal enclaves, such as military bases. Thus, held the trial court, no preemption issues existed as to employees covered by these federal acts because the Oklahoma right to work amendment itself contemplated that those employees were excluded from the amendment's ambit.

¶ 6 The trial court held that § 1A(B)(5) of the right to work amendment, relating to exclusive hiring halls,[5] conflicted with and was preempted by the Labor Management Relations Act and the National Labor Relations Act, § 14(b), as amended, 29 U.S.C. § 164(b). The trial court also held that § 1A(C) of the right to work amendment, relating to payroll checkoff arrangements, conflicted with and was preempted by the Labor Management Relations Act, 29 U.S.C. § 186(c)(4), which regulates such checkoff arrangements.

¶ 7 After concluding that § 1A(B)(5) and § 1A(C) of the right to work amendment conflict with and are preempted by federal law, the trial court went on to analyze whether, under Oklahoma law, the remaining provisions, primarily § 1A(B)(1)-§ 1A(B)(4), were capable of standing alone and being

---

1. Resign or refrain from voluntary membership in, voluntary affiliation with, or voluntary financial support of a labor organization;
2. Become or remain a member of a labor organization;
3. Pay any dues, fees, assessments, or other charges of any kind or amount to a labor organization;
4. Pay to any charity or other third party, in lieu of such payments, any amount equivalent to or pro rata portion of dues, fees, assessments, or other charges regularly required of members of a labor organization; or
5. Be recommended, approved, referred, or cleared by or through a labor organization.
C. It shall be unlawful to deduct from the wages, earnings, or compensation of an employee any union dues, fees, assessments, or other charges to be held for, transferred to, or paid over to a labor organization unless the employee has first authorized such deduction.

D. The provisions of this section shall apply to all employment contracts entered into after the effective date of this section and shall apply to any renewal or extension of any existing contract.
E. Any person who directly or indirectly violates any provision of this section shall be guilty of a misdemeanor.

2. 45 U.S.C. §§ 151, *et seq.*

3. 5 U.S.C. §§ 7101, *et seq.*

4. 39 U.S.C. §§ 1201, *et seq.*

5. A "hiring hall" agreement is one in which the employer agrees to hire only workers the union approves.

executed in accordance with the intent of the people, or were so interdependent with the preempted provisions, it could not be said that the people would have voted to enact the remaining provisions by themselves. The trial court held that the remaining provisions of the right to work amendment, subsections (B)(1)-(B)(4), were "the law's core provisions banning union and agency shops [and] would have been enacted notwithstanding the absence of the invalid provisions." 212 F.Supp.2d at 1329.

¶ 8 On appeal the United States Court of Appeals for the Tenth Circuit held that § 1A(B)(1) [6] of the right to work amendment was also preempted by federal law. As a result of this holding, the Court of Appeals, on its own motion, submitted to us the certified questions set out above and sought our "authoritative guidance."

## HISTORICAL BACKGROUND

¶ 9 The Oklahoma right to work law is one of many that have been passed throughout the United States through both legislation and constitutional amendment. Such laws were enacted to protect employees against discrimination on account of their membership or nonmembership in labor organizations. The U.S. Supreme Court first held that such laws were constitutional in 1949 in the companion cases of *Lincoln Federal Labor Union No. 19129, A.F. of L. v. Northwestern Iron & Metal Co.*, 335 U.S. 525, 69 S.Ct. 251, 93 L.Ed. 212 (1949) and *A.F. of L. v. American Sash & Door Co.*, 335 U.S. 538, 69 S.Ct. 258, 93 L.Ed. 222 (1949). The court held that the Arizona, Nebraska, and North Carolina right to work laws violated neither the due process clause nor the equal protection clause of the 14th Amendment to the United States Constitution.

¶ 10 In 1947, the congress passed § 14(b) of the Labor Management Relations Act, 29 U.S.C. § 164(b), which specifically authorized states to prohibit agreements between unions and employers requiring membership in a

union as a condition of employment. Similarly, § 8 of the same Act, 29 U.S.C. § 158, provided, in effect, that a worker can't be fired for nonmembership in a union if the worker's nonmembership results from the worker's refusal to pay union dues.

¶ 11 The various forms of collective bargaining agreements between unions and employers that require employees to pay union dues in one form or another are generally characterized as "security agreements." *Lincoln Federal*, 335 U.S. at 528, 69 S.Ct. at 253. The conflict over right to work laws has arisen because of the opposing attitudes toward security agreements. Right to work advocates believe that every worker should have the right to decline to pay dues to an organization whose views the worker may oppose, but unions believe that no worker should be entitled to benefit from the advantages secured by unions without having contributed to the unions' support. The cases dealing with this issue are collected and discussed in a recent A.L.R. annotation, *Validity, Construction, and Application of State Right–to–Work Provisions*, 105 A.L.R.5th 243 (2003).

## DISCUSSION

### I.

*Severability Analysis is not Required because the right to work law contemplates that some of its provisions might not operate in some limited circumstances as a result of the interpretation of federal law by federal courts.*

■ ¶ 12 As noted earlier, the trial court held that Oklahoma's right to work amendment did not apply to employees covered by the Railway Labor Act, the Civil Service Reform Act, or the Postal Reorganization Act, and had no application to federal enclaves, such as military bases. Thus, the trial court concluded that no preemption issue existed as to employees covered by these federal acts because the Oklahoma right to

---

**6.** Section 1A(B)(1) of the right to work amendment provides:

B. No person shall be required, as a condition of employment or continuation of employment, to:

1. Resign or refrain from voluntary membership in, voluntary affiliation with, or voluntary financial support of a labor organization

work amendment itself contemplated that those employees were excluded from the amendment's ambit. For reasons discussed below, we agree with the trial court's conclusion that the right to work amendment itself contemplated that, because of the operation of federal law, certain employees in certain circumstances might not be covered by the right to work amendment's terms.

■ ¶ 13 First, we note that whether to apply severability analysis here is a matter of state law. With respect to whether severability analysis is required here, we think it only logical to extend the trial court's analysis concerning the Railway Labor Act, the Civil Service Reform Act, the Postal Reorganization Act, and federal enclaves to those sections of the right to work amendment that have been held to be preempted by the Labor Management Relations Act and the National Labor Relations Act. Consequently, we hold that the right to work amendment contemplates that certain of its provisions might not operate under certain conditions because of the Labor Management Relations Act and the National Labor Relations Act, just as the trial court held that the right to work amendment contemplated that it would not apply to employees covered by the Railway Labor Act, the Civil Service Reform Act, or the Postal Reorganization Act, and had no application to federal enclaves, such as military bases. Thus, severability analysis is not necessary.

¶ 14 Our conclusion that severability analysis is unnecessary is buttressed by the fact that the Oklahoma right to work law applies to state and local government workers and agricultural workers, regardless of its preemption by federal law with respect to certain classes of employees in certain situations. Plaintiffs argue that this is not important because state employees are currently not subject to security agreements because of legislation. Based on this fact, plaintiffs claim that the right to work law provides no new protections to state workers. But the right to work law is a constitutional amendment, so it will protect state employees from any legislative changes that might otherwise be made to labor laws governing public employees. Thus, the right to work law provides a significant additional protection to public employees.

## II.

### *Constitutional provisions are entitled to the same presumption of validity as legislative provisions.*

■ ¶ 15 We have held that it is "the cardinal principle of statutory construction" that a statute is constitutional and should be sustained against challenge where it is possible to do so. *In re Application of the Oklahoma Dept. of Transp.*, 2002 OK 74, ¶ 27, 64 P.3d 546, 553, quoting with approval, *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937); and *Coyle v. Smith*, 1911 OK 64, 113 P. 944, 971. This principle is codified in 75 O.S.2001 § 11a(1).[7] We hold that this "cardinal principle" applies equally to constitutional provisions as well as to statutory enactments. The Supreme Court of Florida reached the same conclusion in *Ray v. Mortham*, 742 So.2d 1276, 1281 (Fla.1999). Although the Florida court held that severability analysis was required, contrary to our holding here, it nevertheless held, as have we, that the presumption of constitutionality applies to constitutional provisions as well as to legislation.[8] The Florida Supreme Court held:

7. Title 75 O.S.2001 § 11a(1) provides:
    In the construction of the statutes of this state, the following rules shall be observed:
    1. For any act enacted on or after July 1, 1989, unless there is a provision in the act that the act or any portion thereof or the application of the act shall not be severable, the provisions of every act or application of the act shall be severable. If any provision or application of the act is found to be unconstitutional and void, the remaining provisions or applications of the act shall remain valid, unless the court finds:
    a. the valid provisions or application of the act are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or
    b. the remaining valid provisions or applications of the act, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

8. We note that severability analysis was called for in the Florida case because a portion of the constitutional amendment at issue there, a term limits provision, was clearly unconstitutional to the extent that it purported to limit the terms of

The issue of severability arises only after an amendment already approved by voters has been challenged. Rather than ignoring the results of the election and requiring the Secretary of State to show that voters would have approved an amendment without the unconstitutional provisions, the burden is properly placed on the challenging party. *The analysis urged by appellants would be the antithesis of the purpose underlying severability—to preserve the constitutionality of enactments where it is possible to do so. Accordingly, we conclude that we should adopt the severability analysis that we have applied to legislative enactments.*

[Emphasis added.] As was the case in Florida, plaintiffs would have us adopt an analysis, which to succeed would require us to ignore the presumption of validity to which the right to work amendment is entitled. This we decline to do.

■ ¶ 16 Plaintiffs' argument that the people would not have approved the right to work law if they had known that certain of its provisions would not apply because of federal law strikes us as counterintuitive. Why would the people not approve a constitutional change that would protect workers from the involuntary payment of union dues simply because federal courts applying federal law might decide that some of its provisions would not apply to some but not all workers in clearly defined circumstances? We conclude that the possibility that the federal courts might hold that certain employees would not be subject to the right to work law cannot be assumed to be a factor which would have caused the people to vote against its passage. It is clear, therefore, that plaintiffs have failed in their burden, as defined by *In re Application of the Oklahoma Dept. of Transp.*, 2002 OK 74 at ¶ 27, 64 P.3d 546, to show that the actions of the federal courts in declaring that certain provisions of the amendment are preempted in certain circumstances has, somehow, rendered the right to work law unconstitutional.

¶ 17 It is important to keep in mind that the federal courts in this matter have not declared any provision of the right to work law unconstitutional. Instead, the federal courts have merely held that the right to work law does not apply in certain circumstances due to the primacy of federal law, not that preemption lead to invalidation of any of the right to work law's provisions. Thus, the cases cited by plaintiffs in which this Court has examined whether a statute containing *unconstitutional* provisions would have been passed, had the legislature known that part of what it passed was unconstitutional, are inapposite here. See, for example, *Comanche Light & Power v. Nix*, 1916 OK 330, 156 P. 293, where the U.S. Supreme Court had declared that a state taxation statute was partially *unconstitutional* because it attempted to regulate interstate commerce. Here, by contrast, the federal courts have held that certain of the right to work law's terms are *preempted* by federal law, not that they are unconstitutional. Indeed, the Tenth Circuit carefully spelled out in its certified question No. 1 that certain of the right to work law's provisions were unenforceable because of their "preemption . . . as opposed to the 'invalidation' of those provisions." Certified Question No. 1.

¶ 18 Just as whether some of the right to work amendment's provisions were preempted by federal law was a question of federal law, whether the finding of the federal court's requires us to engage in severability analysis is a question of state law. We hold that severability analysis is not necessary here for the reason that the right to work law contemplated that some of its provisions might be preempted by federal law and because plaintiffs failed to overcome the presumption that the right to work law is valid and enforceable. Thus, we decline to address plaintiffs' various legal arguments in support of their claim that the rulings of the federal courts in this matter establish that the voters were somehow mislead.

## CONCLUSION

■ ¶ 19 Although the question whether state law is preempted is a matter of federal law, the severability question is a matter of state law. Under Oklahoma law, constitu-

Unites States Congressmen and Senators, which

is a situation that does not obtain here.

tional provisions are entitled to the same presumption of validity as are statutes. We hold that rulings by federal courts applying federal law to the effect that certain provisions of the right to .work law are subject to preemption (but not "invalidation") of some of its terms as to some but not all workers in some but not all situations fails to overcome the presumption of validity to which the right to work law is entitled under Oklahoma law. Severability analysis is therefore not called for here. Further, to hold the right to work amendment unconstitutional under the circumstances presented here would be to thwart the clearly expressed will of the people.

## CERTIFIED QUESTIONS ANSWERED.

WATT, C.J., OPALA, V.C.J., HODGES, HARGRAVE, KAUGER, WINCHESTER, JJ., concur.

LAVENDER, SUMMERS, BOUDREAU, JJ., concur in result.

1. Art. 23 § 1A, Okl. Const. (adopted by vote 25 September 2001).

2. From the terms of the United States Constitution, Art. 1, § 8, cl. 3, the so-called Commerce Clause, Congress has drawn the authority to regulate any labor dispute affecting interstate commerce. *See United Auto., Aircraft and Agric. Implement Workers of America v. Wisconsin Employment Relations Bd.*, 351 U.S. 266, 271, 76 S.Ct. 794, 797 100 L.Ed. 1162 (1956); *Guss v. Utah Labor Relations Bd.*, 353 U.S. 1, 3, 77 S.Ct. 598, 599, 1 L.Ed.2d 601 (1957); *N.L.R.B. v. Fainblatt*, 306 U.S. 601, 606–07, 59 S.Ct. 668, 672, 83 L.Ed. 1014 (1939).

3. The enactment of the Labor Management Relations Act of 1947 (commonly referred to as the Taft–Hartley Act), as an amendment to the National Labor Relations Act (NLRA), illustrates the expansive control Congress exercises in the area of labor relations. The LMRA is intended to achieve the following purpose:

> in order to promote the full flow of commerce, to prescribe the legitimate rights of both employees and employers in their relations affecting commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, to protect the rights of individual employees in their relations with labor organizations whose activities affect commerce, to define and proscribe practices on the part of labor management which affect commerce and are inimical to the general welfare, and to protect the rights

OPALA, V.C.J., concurring.

¶ 1 The court answers today that Oklahoma's right-to-work amendment need not be subjected to severability analysis. I write separately to (1) explain the purpose and application of severability analysis and (2) emphasize that each provision of Oklahoma's right-to-work amendment remains valid, operating harmoniously with applicable federal law to form the expansive body of legal norms that govern labor-management relations within the State of Oklahoma.

¶ 2 Federal labor law, where applicable, and the Oklahoma right-to-work amendment[1] must operate in concert. Labor-management relations encompass three distinct groups for employment classification: (1) employment relationships regulated *entirely* by federal law,[2] (2) employment contracts that fall within the narrow exception reserved for state governance by the Labor Management Relations Act (hereinafter "LMRA"),[3] and (3) employment relationships outside the impact of federal law which are regulated *exclusively by state law.*[4] We must assume as a given

> of the public in connection with labor disputes affecting commerce.

29 U.S.C. § 141(b).

The LMRA leaves a narrow window in which state regulation is permissible. *See Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776 (A.F.L.)*, 346 U.S. 485, 488, 74 S.Ct. 161, 164, 98 L.Ed. 228 (1953); *Pierce v. Otis Elevator Co.*, 1958 OK 254, ¶ 7, 331 P.2d 481, 483–84; *McNish v. American Brass Co.*, 139 Conn. 44, 89 A.2d 566, 568–69 (1952), *cert. denied*, 344 U.S. 913, 73 S.Ct. 336, 97 L.Ed. 704 (1953) (Congress sought exclusively to govern only certain aspects of employment relationships by enacting the NRLA of 1935). Both the express terms and legislative history of 29 U.S.C. § 164(b) allow states to prohibit compulsory union membership as a condition of employment. *N.L.R.B. v. Houston Chapter, Assoc. Gen. Contractors of America, Inc.*, 349 F.2d 449, 453 (5ᵗʰ Cir.1965), *cert. denied*, 382 U.S. 1026, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966). *See also Gray v. Local 714, Int'l Union of Operating Eng'rs*, 778 F.2d 1087, 1090 (5ᵗʰ Cir.1985).

4. Federal regulatory power over a labor-management relationship is drawn from (1) the employer's activities affecting interstate commerce or from (2) local activities which substantially affect or relate to interstate commerce. *N.L.R.B. v. Fainblatt*, supra note 2; *N.L.R.B. v. Dixie Terminal Co.*, 210 F.2d 538 (6ᵗʰ Cir.1954), *cert. denied*, 347 U.S. 1015, 74 S.Ct. 871, 98 L.Ed. 1138. The LMRA "provides jurisdiction in the federal dis-

that Oklahoma's constitutional amendment evinces not only *this state's* regulatory policy vis-a-vis the LMRA, 29 U.S.C. § 164(b), where applicable, but also voices the state's policy for the labor market utterly unaffected by federal law.[5] Drafters of the Oklahoma right-to-work amendment doubtless sought to regulate the window opened by the LMRA as well as the federally unregulated field of labor-management relations within this state. A contrary assumption would be unsupported by the express language of the amendment.

## I.

## WE ASSUME THE U.S. DISTRICT COURT CORRECTLY LIMITED APPLICATION OF OKLAHOMA'S RIGHT–TO–WORK AMENDMENT IN ACCORDANCE WITH EXTANT FEDERAL LAW

¶ 3 This court's authority when responding to a certified question is limited to answering state-law questions when it is satisfied there "is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state."[6] Because severability is a matter of state law, the United States Court of Appeals for the Tenth Circuit deferred on the issue to this court's answer about whether, on review of the U.S. Districts Court's decision now on appeal, severability analysis with regard to Oklahoma's right-to-work amendment may be entirely dispensed with as unnecessary.[7]

¶ 4 The Supremacy Clause of Article VI of the United States Constitution arms Congress with the power to preempt state law.[8] Congress has regulated labor-management relations, allowing states to intrude solely upon a narrowly defined portion. Whether Oklahoma's amendment fits within the narrow exception granted by Congress or reaches beyond and is hence preempted by federal law is exclusively a federal-law issue.[9] This

---

**5.** Oklahoma's right-to-work amendment has more than a single mission. It is intended to govern two different types of employment relationships (1) those that fall within the narrow window authorized by the LMRA, and (2) those entirely unaffected by federal labor law.

trict courts over suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in [the Act]." *United Ass'n of Journeymen v. Local 334*, 452 U.S. 615, 616, 101 S.Ct. 2546, 2547, 69 L.Ed.2d 280 (1981).

Defining the phrase "affecting interstate commerce" requires a combining of two distinct concepts, "commerce" and "affecting commerce." The term "commerce" is defined as:

trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any state, Territory, or the District of Columbia, or within the District of Columbia or any Territory, or between points in the same sate but through any other State or any Territory or the District of Columbia or any foreign country.

29 U.S.C. § 152.1(6)

The phrase "affecting commerce" is defined as:

in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce.

29 U.S.C. § 152.1(7).

**6.** The terms of 20 O.S.2001 § 1602 state in pertinent part:

The Supreme Court ... may answer a question of law certified to it by a court of the United States ... if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of this state.

**7.** *Leavitt v. Jane L.*, 518 U.S. 137, 139, 116 S.Ct. 2068, 2069, 135 L.Ed.2d 443 (1996).

**8.** The preemption doctrine stems from the Supremacy Clause of the United States Constitution. It invalidates any state law which contradicts or interferes with an act of Congress. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909, 85 L.Ed.2d 206 (1985) (citing *Gibbons v. Ogden*, 22 U.S. 1, 6 L.Ed. 23, 9 Wheat. 1 (1824)); *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217–1218, 10 L.Ed.2d 248 (1963). *See also Smith Cogeneration Mgmt, Inc. v. The Corporation Comm'n*, 1993 OK 147, ¶ 21, 863 P.2d 1227, 1239.

**9.** Whether state law is preempted by federal law is governed by federal law. *Allis–Chalmers Corp., supra* note 8, at 208, 105 S.Ct. 1904.

The federal appellate court correctly separated in this case the preemption issue, which it retains, from the severability issue, which it certified to this court. The former, preemption, pres-

court doesn't give a federal court advice on issues of federal law. Under the certified question statute, 20 O.S.2001 § 1602, we may give a federal court our answer solely on the issues of state law. For our answer today we must assume the preemptive impact to be that which stands decreed by the U.S. Court of Appeals for the Tenth Circuit.

## II.

## THE PURPOSE OF SEVERABILITY ANALYSIS

¶ 5 Severability analysis is a necessary undertaking when some, but not all, provisions of an enactment are deemed unconstitutional and hence must be voided. Its purpose is to determine whether non-offending statutory provisions may survive after the rejected invalid clauses are separated from the whole. The severability of a state constitutional or statutory enactment, which is a question of state law,[10] is not contingent on the presence of an express severability clause within the particular enactment.[11] Considerations relevant to severability analysis are outlined in the provisions of 75 O.S.2001 § 11a.[12]

¶ 6 Survival of remaining statutory provisions is appropriate when the valid and voided (as unconstitutional) provisions are not so "inseparably connected with and so dependent upon" each other that the surviving provisions would not have otherwise been enacted.[13] Consideration must be given to whether the surviving provisions rely on the severed portion for meaning or enforcement.[14] The terms of 75 O.S.2001 § 11a set forth a clear prerequisite for the employment of severability analysis. This may occur when a statutory provision or application of the statute is declared unconstitutional and is hence voided. If no provision is invalidated as unconstitutional, severability analysis is unnecessary and inappropriate.

ents a federal-law question whereas the latter, severability, constitutes a state-law question. *See Holloway v. UNUM Life Insurance Co. of America,* 2003 OK 90, — P.3d —.

10. *Leavitt, supra* note 7, at 139, 116 S.Ct. 2068. *See also Panhandle Eastern Pipeline Co. v. State of Oklahoma ex. rel., Comm'rs of the Land Office,* 83 F.3d 1219, 1229 (10th Cir.1996) (citing *Jane L. v. Bangerter,* 61 F.3d 1493, 1497 (10th Cir.1995), *cert. denied,* 520 U.S. 1274, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997)).

11. "Severability of the non-offending sections . . . does not necessarily depend on the presence of the clause." *Ethics Comm'n of Oklahoma v. Cullison,* 1993 OK 37, ¶ 25, 850 P.2d 1069, 1077. *See also United States v. Jackson,* 390 U.S. 570, 585, n. 27, 88 S.Ct. 1209, 1218, n. 27, 20 L.Ed.2d 138 (1968).

12. The pertinent part of 75 O.S.2001 § 11a states:

In the construction of the statutes of this state, the following rules shall be observed:
1. For any act enacted on or after July 1, 1989, unless there is a provision in the act that the act or any portion thereof or the application of the act shall not be severable, the provisions of every act or application of the act shall be severable. If any provision or application of the act is found to be unconstitutional and void, the remaining provisions or applications of the act shall remain valid, unless the court finds:
a. the valid provisions or application of the act are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the Leg-

islature would have enacted the remaining valid provisions without the void one; or
b. the remaining valid provisions or applications of the act, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

13. This court recognizes the "clear legislative intent" that severing valid provisions of a statute from the invalid is appropriate when the "remaining provisions are so inseparably connected with and so dependent upon the void provisions that it is apparent the legislature would not have enacted the remaining valid provisions without the void ones." *Panhandle Eastern Pipeline Co., supra* note 10, at 1230 (citing *Kinney v. Board of Comm'rs of Tulsa County, Okla.,* 1995 OK CIV APP 49, ¶ 11, 894 P.2d 444, 448). *See also Ethics Comm'n of Oklahoma, supra* note 11, at ¶ 25 (a presumption of severability arises under the provisions of 75 O.S.2001 § 11a unless "(1) the non-offending portions [are] so connected with and dependent upon the unconstitutional portion that we cannot presume the Legislature would have enacted the former without the latter, or (2) that the non-offending portions are incapable of standing alone"). A similar standard applies to severability analysis when a statute is approved by a vote of the people. Severability is appropriate so long as the valid provisions (1) can stand independent from the severed statutory provisions and (2) voters would have approved the surviving statute.

14. *Ethics Comm'n of Oklahoma, supra* note 11, at ¶ 26.

## III.

### BECAUSE ALL PROVISIONS OF THE RIGHT–TO–WORK AMENDMENT REMAIN VALID, SEVERABILITY ANALYSIS IS RENDERED UNNECESSARY

¶ 7 As the court recognizes in its pronouncement and I discuss below, the judgment of the United States District Court for the Eastern District of Oklahoma restricts the application of Oklahoma's right-to-work amendment without rendering any of its provisions void as unconstitutional. The district court determined (1) employees subject to regulation under the RLA,[15] the CSRA,[16] the PRA[17] and federal enclave jurisdiction are outside the scope of Oklahoma's right-to-work amendment,[18] (2) Article 23 § 1A subsection (B)(5), Okl. Const., exceeds the scope of authority granted the states by § 164(b) of the LMRA,[19] and (3) Article 23 § 1A subsection (C) is outside the scope of authority granted by § 164(b) of the LMRA.[20] After determining that limited aspects of the right-to-work amendment "conflict with and are preempted by the LMRA,"[21] the district court turned its attention to the severability issue, *but did not declare any right-to-work provision void as unconstitutional.*

¶ 8 The judgment of the United States District Court for the Eastern District of Oklahoma pronounced that Article 23 § 1A subsections (B)(5) and (C) were "preempted by federal law as being outside the grant of authority conferred by Section 164(b) of the LMRA."[22] It does not follow from this conclusion that the provisions are void based on the determination that statutory provisions are preempted for exceeding the scope of federally granted authority.[23] Rather, the district-court determination operates **to condition or restrict the application of the provision instead of rendering it void.**

¶ 9 The district court noted restrictions in the application of the right-to-work amendment that prevent the statute from conflicting with or exceeding the scope of authority granted by federal law. Applying the federal-law preemptions outlined by the district court, the right-to-work amendment is limited in its application by the following conditions (1) the amendment applies only to employees encompassed by the LMBR, (2) hiring halls that discriminate between members and non-members are prohibited, and (3) employee authorization is required before union dues may be deducted, the au-

---

15. Railway Labor Act, 45 U.S.C. § 151 *et seq.*

16. Civil Service Reform Act, 5 U.S.C. § 7101 *et seq.*

17. Postal Reorganization Act, 39 U.S.C. § 1201 *et seq.*

18. *Local 514, Transport Workers Union of America v. Keating,* 212 F.Supp.2d 1319, 1326 (E.D.Okla.2002).

19. *Local 514, Transport Workers Union of America, supra* note 18, at 1327.

20. *Local 514, Transport Workers Union of America, supra* note 18, at 1327.

21. *Local 514, Transport Workers Union of America, supra* note 18, at 1328.

22. *Local 514, Transport Workers Union of America, supra* note 18, at 1327.

23. Preemption is a matter of Congressional intent and "occurs when federal law *displaces* a body of state law on the same subject." *Lewis v. Sac and Fox Tribe of Oklahoma Housing Authority,* 1994 OK 20, ¶ 16, 896 P.2d 503, 510. "The purpose of Congress is the ultimate touchstone" for determining preemption based on the commerce clause of the United States Constitution. *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978) (quoting *Retail Clerks Int'l Ass'n, Local 1625, AFL–CIO v. Schermerhorn* 375 U.S. 96, 103, 84 S.Ct. 219, 222, 11 L.Ed.2d 179 (1963)).

Preemption occurs in four distinct instances (1) by express statutory language, (2) by a pervasive regulatory scheme which infers the presence of congressional intent that the federal regulation did not need supplemental state-law provisions, (3) when an actual conflict between state and federal laws makes it impossible to comply with both, or (4) where the objectives and purposes of Congress are thwarted by state law. *Lewis v. Sac and Fox Tribe,* 1994 OK 20 at ¶ 16, n. 49, 896 P.2d at 511, n. 49 (citing *Todd v. Frank's Tong Service, Inc.,* 1989 OK 121, ¶ 5, 784 P.2d 47, 49; *Missouri–Kansas–Texas R. Co. v. State,* 1985 OK 108, ¶ 41, 712 P.2d 40, 47). *See also Smith Cogeneration Mgmt., Inc., supra* note 8, at ¶ 21. When a statute is preempted it becomes inapplicable to the arena governed by federal law but is

thorization to remain irrevocable for one year.

¶ 10 The district court's conclusion that Oklahoma's right-to-work amendment applies only to employment relationships falling within the scope of § 164(b) of the LMRA articulates the restricted scope of the amendment. As the district court states, "application of the State of Oklahoma's prohibition against union security devices is necessarily limited to those employees falling under the purview of the LMRA." [24] The practical effect of the district court's declarations is to restrict the full range of right-to-work amendment provisions to those private labor-management relationships which do not substantially affect interstate commerce.

¶ 11 When addressing restrictions in subsections (B)(5) and (C) of the right-to-work amendment, the district court relied on federal law.[25] The drafters of the right-to-work amendment sought primarily to regulate (1) those labor-management relations that lie within the narrow window of state regulation authorized by § 164(b) of the LMRA, and (2) labor-management relations completely outside the scope of federal authority. Labor relationships falling within the limited scope of state regulation allowed by § 164(b) stand limited by applicable federal law. That law dictates that these labor relationships permit non-discriminatory union hiring halls [26] and an annual obligation once an employee authorizes a payroll deduction for union dues.[27] Labor relationships within the exclusive authority of state governance are utterly unaffected by federal regulations. This leaves Oklahoma's amendment fully applicable in those contexts.

¶ 12 Despite imposing federal-law restrictions on the right-to work-amendment, the district court refused to adopt a statutory construction that would defeat the constitutionality of Oklahoma's amendment. Specifically, the district court applied the rules of statutory construction supporting "a construction of the state law which will uphold its validity as opposed to one which will render it void by reason of federal preemption." [28] In adopting rules of statutory construction that uphold the overall validity of the right-to-work amendment, the district court acknowledged (1) "Oklahoma's prohibition against union security devices is necessarily limited to those employees who fall under the purview of the LMRA," [29] and (2) Oklahoma's right-to-work law does not include individuals governed by the "RLA, the CSRA, the PRA and federal enclave jurisprudence." [30] Preemption (by invalidation) of the right-to-work amendment was avoided through a statutory construction which restricts application of the amendment to the private labor sector and the area encompassed exclusively by the states.

¶ 13 The drafters of Oklahoma's right-to-work amendment reasonably contemplated and expected the limiting effect of applicable federal law. This is evidenced by the absence of an express or implied intention to avoid conforming or tailoring the text to applicable federal law. Recognizing that federal law does not operate on the universe of labor-management relations, the drafters sought to regulate (1) the narrow area of labor relations governed exclusively by the states, and (2) the federally authorized window opened by LMRA § 164(b). Because federal labor law is neither stagnant nor

not rendered nugatory in the remaining arena that is free from federal-law impact.

**24.** *Local 514, Transport Workers Union of America, supra* note 18, at 1324.

**25.** *Local 514, Transport Workers Union of America, supra* note 18, at 1326–27 (citing *Local 357, Int'l. Broth. of Teamsters, Chauffeurs, Warehousemen, and Helpers of America v. N.L.R.B.,* 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961); *Laborers Int'l Union of North America, Local 107 v. Kunco, Inc.,* 472 F.2d 456, 458–59 (8th Cir.1973); *N.L.R.B. v. Tom Joyce Floors, Inc.,* 353 F.2d 768, 770–71 (9th Cir.1965); *N.L.R.B. v. Houston Chapter Ass'd Gen'l Contractors,* 349 F.2d 449, 451

(5th Cir.1965), *cert. denied,* 382 U.S. 1026, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966)).

**26.** *Supra* note 25.

**27.** 29 U.S.C. § 186(c)(4).

**28.** *Local 514, Transport Workers Union of America, supra* note 18, at 1325 (citing *In re Bissell,* 255 B.R. 402, 418 (Bankr.E.D.Va.2000)).

**29.** *Local 514, Transport Workers Union of America, supra* note 18, at 1324.

**30.** *Local 514, Transport Workers Union of America, supra* note 18, at 1326.

mummified in its present form, the drafters understood the outer boundaries of right-to-work amendment must be flexible to remain in conformity with present as well as future federal re-definitions. The restrictions imposed by the district court's pronouncement clearly articulate specific limitations on Oklahoma's right-to-work amendment while allowing the entire text of the amendment to stand available for application in conformity with extant federal law.

¶ 14 The district court's judgment that federal law preempts the text of Article 23 § 1A subsections (B)(5) and (C) does not create a lacuna in the amendment. A facial four-corners' examination of the amendment discloses complete survival of the legislation despite federal-law-imposed conditions being placed on the application of the right-to-work amendment. The impact of preemption on the amendment does not leave any unfilled territory that lies within the coverage of the statute, which if present, would call for severability analysis. As no provisions of the right-to-work amendment are constitutionally invalidated by the district court's declaratory judgment, the statutorily defined prerequisite for an employment of severability analysis (that a provision be declared void as unconstitutional) has not been met. The use of that analysis is hence inappropriate.

SUMMERS, J., concurring in result and joined by LAVENDER, J. and BOUDREAU, J.

¶ 1 The federal courts in this case have determined that the Oklahoma Right to Work amendment, Okla. Court Art. 23 § 1A, has no application to certain employees,[1] and further was preempted in part by certain federal legislation.[2] The Federal District Court held that even with the invalid and preempted portions out, the Right to Work amendment's core provisions would have still been enacted, and thus withstood judicial severability analysis.

¶ 2 Preemption questions are those of federal law[3] and are not before us today. But severability of a partially invalid set of laws is a state question.[4] I must initially point out that the Court's opinion distinguishing preempted state law from unconstitutionality is incorrect. A state law is unconstitutional when it is preempted by federal legislation. Because the Court's opinion turns on this point, I must point out that the U.S. Supreme Court does not share our Court's view. For example:

**Because the state Act's provisions conflict with Congress's specific delegation** to the President of flexible discretion, with limitation of sanctions to a limited scope of actions and actors, and with direction to develop a comprehensive, multilateral strategy under the federal Act, **it is preempted,** and **its application is unconstitutional, under the Supremacy Clause.**

*Crosby v. National Foreign Trade Council,* 530 U.S. 363, 388, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000), (emphasis added).

One hornbook explains: "The supremacy clause mandates that federal law overrides, i.e., preempts, any state regulation where there is an actual conflict between the two sets of legislation." J. Nowak & R. Rotunda, *Constitutional Law,* 319 (5th Ed.1995). Preempted state law is struck down as unconstitutional—it violates the supremacy clause of the U.S. Constitution.[5] In *Crosby,*

1. The Railway Labor Act, 45 U.S.C. § 151 *et seq.,* the Civil Service Reform act, 5 U.S.C. § 7101 *et seq.,* the Postal Reorganization Act, 39 U.S.C. § 1201 *et seq.;* employees on federal enclaves, such as military bases.

2. The Labor Management Relations Act, 29 U.S.C. § 186(c)(4) and the National Labor Relations Act. 29 U.S.C. § 164(b).

3. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 214, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), ("the question whether the Wisconsin tort is sufficiently independent of federal contract interpretation to avoid pre-emption is, of course, a question of federal law").

4. *Exxon Corp. v. Hunt,* 475 U.S. 355, 376, 106 S.Ct. 1103, 89 L.Ed.2d 364 (1986), (in the context of a preemption analysis the High Court explained that the proper state court should decide whether state law provisions were severable).

5. Article VI of the U.S. Constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl.2.

the application was unconstitutional, as in the present case before us. It is the partial application of state law that is preempted and thus unconstitutional.[6]

¶ 3 On appeal the Tenth Circuit Court has certified to us the following questions:

1. Is severability analysis required in light of the preemption of [Okla. Const.] article XXIII, § 1A(B)(1), § 1A(C), and § 1A(E) (insofar as it enforces § 1A(B)(1), § 1A(B)(5), and § 1A(C)) as to workers covered by the NLRA, as opposed to the "invalidation" of those provisions?

2. If severability analysis is appropriate, are § 1A(B)(1), § 1A(B)(5), § 1A(C), and § 1A(E) (insofar as it enforces § 1A(B)(1), § 1A(B)(5), and § 1A(C)) severable from the non-preempted portions of § 1A?

¶ 4 The first question: "Is a severability analysis required?" I would answer in the affirmative. However, the Court states that it takes the reasoning applicable to those workers covered by the Railway Labor Act, Civil Service Reform Act, and Postal Reorganization Act, and applies it to workers covered by the National Labor Relations Act and the Labor Management Relations Act. Opin. at ¶ 13. I do not agree with this analysis in part, because: (1) The federal court stated that Art. 23 § 1A was not applicable **in its entirety** to workers covered by Railway Labor Act, Civil Service Reform Act, and Postal Reorganization Act, and that **only portions** of Art. 23 § 1A were invalid as to workers covered by the National Labor Relations Act and the Labor Management Relations Act; and (2) The point of the certified questions is whether **valid portions** (i.e., non-preempted portions) of Art. 23 § 1A may nevertheless apply to workers covered by the

National Labor Relations Act and the Labor Management Relations Act.[7]

¶ 5 The Court concludes that the valid portions of Art. 23 § 1A apply to all workers to whatever extent they are not preempted. I agree in that result here, but only because of a severability analysis showing that the remaining portions of Art. 23 § 1A are capable of being enforced absent the preempted language. The severability analysis is what shows this capability.

¶ 6 Although the Court's opinion states that a severability analysis is not necessary, I must note that some of the language used by the Court herein is part of a severability analysis used by most courts. For example, the Court's opinion states that a severability analysis is not needed because Art. 23 § 1A was not intended to apply to certain groups of people, i.e., those covered by the Railway Labor Act, Civil Service Reform Act, Postal Reorganization Act. As I explain below, this type of reasoning, non-application of a state law to a particular class, or here, easily identifiable groups of people, *is* part of a severability analysis.

¶ 7 Cases involving a preemption of state law by federal law frequently involve a severability analysis, and the question of whether the remaining portions of non-preempted state law may remain valid presents a question for a state court to decide. For example in one opinion the High Court explained that a state's law was, as in the case before us today, preempted by federal law, in part,[8] and the Court concluded that the proper state court should decide whether the remaining valid provisions of state law were severable.

State legislation is invalid "to the extent that it actually conflicts with federal law,"

---

6. One aspect of unconstitutionality, a "void" state law, is seen in those opinions discussing the effect of this federal constitutional supremacy. For example: "It is basic to this constitutional command that all conflicting state provisions be without effect.... Of course, a state statute is **void** to the extent it conflicts with a federal statute...." *Maryland v. Louisiana*, 451 U.S. 725, 746–747, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981), material omitted and emphasis added.

7. As I explain herein, I agree with the Court that the People had no intent to subvert federal law when enacting Article 23 § 1A, and that this lack of intent applies equally to all of the federal acts discussed in this proceeding.

8. The Court concluded that the New Jersey Spill Compensation and Control Act, N.J.Stat.Ann. §§ 58:10–23.11 to 58:10–23.11z (West 1982 and Supp.1985) (Spill Act), was pre-empted in part. *Exxon Corp. v. Hunt*, 475 U.S. at 358, 363, 376–377, 106 S.Ct. 1103.

*Pacific Gas & Electric Co. v. Energy Resources Comm'n*, 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983), and such a conflict has been demonstrated in this case. We leave to the New Jersey Supreme Court the state-law question whether, or to what extent, the nonpreempted provisions of the statute are severable from the pre-empted provisions.

*Exxon Corp. v. Hunt,* 475 U.S. 355, 376, 106 S.Ct. 1103, 89 L.Ed.2d 364 (1986).

This Court has used a severability analysis and concluded that invalid language invalidated the entire provision in which the invalid language appeared.[9] We have also used a severability analysis for severing the invalid portion and upholding the valid portion as legally effective.[10]

¶ 8 The severability analysis includes both a facial challenge to the language used in a statute or constitutional provision *as well its applications.* One author explained the authority on this issue as follows:

"... the Supreme Court, the state courts, and secondary authorities all appear to agree that the invalidity of part of a *law or of some of its applications* will not affect the remainder (1) if the valid *provisions or applications* are capable of being given legal effect standing alone, and (2) if the legislature would have intended them to stand with the invalid provisions stricken out."

Stern, *Separability and Separability Clauses in the Supreme Court,* 51 Harv. L.Rev. 76 (1937), emphasis added.

That author further explained that courts use a severability analysis for problems of language as well as application

Questions of separability fall into two general classes. One relates to situations in which some *applications* of the same language in a statute are valid and other applications invalid; the other to statutes containing particular *language*—whether words, phrases, sentences or sections—which is invalid, and other language entirely constitutional.... The first will be described as the problem of separable applications; the second as the problem of separable language.

*Id.* 51 Harv. L.Rev. 78–79 (1937), emphasis in original and material omitted.

This view is consistent with our statute on severability. See, for example, *Ethics Commission v. Cullison,* 1993 OK 37, 850 P.2d 1069, 1078, where we said that: "Section 11a of Title 75 also requires examining whether an act may be severable in application."

¶ 9 The method a court uses in making its conclusion is based upon the court's assessment that the valid portion is capable of being enforced absent the invalid part, and that the legislative body intended such. For example, one author explained that a separability analysis involving *different applications* of a statute requires a court to determine legislative intent—specifically whether "it is evident, from a contemplation of the statute and of the purpose to be accomplished by it, that it would not have been passed at all, except as an entirety, and that the general purpose of the legislature will be defeated if it shall be held valid as some cases and void as to others." 1 T. Cooley, *Constitutional Limitations,* 367 (8th ed.1927). The invalid parts of a legislative act, whether invalid by language or application, must be separable from the valid parts

9. *See, e.g., City of Oklahoma City v. State ex rel. Oklahoma Dept. of Labor,* 1995 OK 107, 918 P.2d 26, 31, (an entire act was unconstitutional regardless of a severability clause therein); *Ethics Commission v. Cullison,* 1993 OK 37, ¶¶ 25–28, 850 P.2d 1069, 1077–1078, (some sections of a House Joint Resolution were severable but others were not); *Tulsa Exposition & Fair Corp. v. Board of County Commissioners of Tulsa County,* 1970 OK 67, 468 P.2d 501, 507, (because a statutory population classification was "an integral part of the Act" it was not severable from the rest of the Act, and the entire Act was unconstitutional).

10. *See, e.g., Ethics Commission v. Cullison,* 1993 OK 37, ¶¶ 25–28, 850 P.2d 1069, 1077–1078, (some sections of a House Joint Resolution were severable but others were not); *Elk City v. Johnson,* 1975 OK 97, 537 P.2d 1215, 1217, (remainder of Okla. Const. Art. 10 § 35 remained valid after excision of invalid portion); *Semke v. State ex rel. Oklahoma Motor Vehicle Commission,* 1970 OK 15, 465 P.2d 441, 446, (§ 562a of the Act [47 O.S.1961, § 561–568] was severable from the portions requiring a State license for advertising and selling new or unused motor vehicles, and thus the latter portions were valid).

so that the valid may be enforced, otherwise the whole act is invalid: "In general where the different portions of the statute form 'inseparable parts of the same system,' the whole is invalidated by the unconstitutionality of a part." T. Sedgwick, *The Interpretation and Construction of Statutory and Constitutional Law*, 414 (2d ed. 1874). In sum, the U.S. Supreme Court, this Court and authors such as Stern, Cooley, and Sedgwick, agree that a severability analysis is used to determine whether a law, invalid in part, may nevertheless have its valid parts enforced. Thus, I decline to join the Court's opinion rejecting the application of such analysis to the present controversy.

¶ 10 What did the People intend when Art. 23 § 1A became law? A severability analysis attempts to determine such intent. The challenge to Art. 23 § 1A based upon application to workers covered by the Railway Labor Act, Civil Service Reform Act, Postal Reorganization Act, and the National Labor Relations Act is based solely upon the general and broad nature of the language in Article 23.[11] No language in Art. 23 § 1A specifically targets such employees or makes reference to federal law.

¶ 11 In 1996 this Court stated that: "Four years ago, this Court held that the people's legislative power as defined in article 5, section 1, of the Oklahoma Constitution does not include the power to use the initiative process to attempt to change federal constitu-

tional law." *In re Initiative Petition No. 364*, 1996 OK 129, 930 P.2d 186, 195, *citing, In re Petition No. 349, State Question No. 642*, 1992 OK 122, 838 P.2d 1. No language in Article 23 § 1A may be reasonably construed as an attempt to overturn federal law. These two opinions stating the People's inability to amend federal law via a State Question predate the passage of Art. 23 § 1, and this Court may presume that the People, acting as a legislative body, were aware of such authority.[12] Further, It is nothing unique to the jurisprudence of this State that federal law may be used to carve out an exception to applying an Oklahoma legislative act to certain groups of people. *See, e.g., Oklahoma Tax Commission v. Chickasaw Nation*, 515 U.S. 450, 458–459, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995), (Court noted its holdings where it has held unenforceable a number of state taxes whose legal incidence rested on a tribe or on tribal members inside Indian country).

¶ 12 This Court has construed, when possible, statutes and constitutional provisions so as to give effect to valid parts thereof.[13] We have said that, as a matter of statutory interpretation, a reasonable and rational statutory construction that upholds the validity of a legislative act will be used by courts. *TXO Production Corp. v. Oklahoma Corp. Commission*, 1992 OK 39, 829 P.2d 964, 968–969.[14] The People's intent to have a partial

---

11. One challenge to Art. 23 § 1 is based upon the National Labor Relations Act (29 U.S.C. § 151 et seq.), as amended by the Labor Management Relations Act, (61 Stat.140). A second challenge is based upon the Railway Labor Act (45 U.S.C. § 151 et seq.), Civil Service Reform Act (5 U.S.C. § 7101 et seq.), Postal Reorganization Act (39 U.S.C. § 1201 et seq.), and the non-application of Art. 23 to federal enclaves. Although the certified questions involve solely the challenge based upon the Labor Management Relations Act, the plaintiffs argue that valid provisions of Article 23 may not be severed from invalid because of the Article's inapplicability to workplaces regulated by the Railway Labor Act, Civil Service Reform Act, and Postal Reorganization Act.

12. This Court presumes that legislative authority is exercised with a knowledge of this Court's opinions. *See, e.g., Bishop v. Takata Corp.*, 2000 OK 71, n. 14, 12 P.3d 459, 463, (discussion of legislative acquiescence to this Court's construction of a statute). Courts are "zealous to protect

and preserve" the people's right of initiative. *In re Initiative Petition No. 364*, 1996 OK 129, 930 P.2d 186, 195. This presumption favors that right.

13. *See, e.g., Collins–Dietz–Morris Co. v. State Corporation Commission*, 1931 OK 301, 7 P.2d 123, (a determination of the invalidity of an act with reference to one class of motor carriers does not require a determination of the validity of the act with reference to other classes, or affect the validity of the act as to the other classes, and the act may be sustained as to one class although unconstitutional as to the other classes).

14. *See also St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.*, 1989 OK 139, 782 P.2d 915, 918, ("Whenever an act of the legislature can be so construed *and applied* as to avoid conflict with the constitution, and give it the force of law, such construction will be adopted by the courts."), (Emphasis added), *quoting, Williams v. Bailey*, 1954 OK 19, 268 P.2d 868, 871.

application of law combined with an absence of any showing of an intent to subvert federal law supports a conclusion of an intent that the valid portions of Article 23 § 1 should be applied as severed.

¶ 13 On this issue the parties discuss the lack of a severability clause, and the application of 75 O.S. § 11a.[15] Section 11a is a statutorily required presumption of severability. Facially, this section applies to "statutes". Whether § 11a applies does not matter in this constitution-based controversy.[16] This is because the absence of a severability clause in Art. 23 § 1A, is not determinative.

¶ 14 When construing a federal statute the U.S. Supreme Court has stated that while the presence of a severability clause shows Congress' intent for severance, the absence of the clause does not carry with it a showing of an opposite intent.

> The inquiry is eased when Congress has explicitly provided for severance by including a severability clause in the statute. This Court has held that the inclusion of such a clause creates a presumption that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision. *See INS v. Chadha*, 462 U.S. at 932, 103 S.Ct. at 2774; *Champlin Refining Co. v. Corporation Comm'n of Oklahoma*, 286 U.S. at 235, 52 S.Ct. at 565. In such a

case, unless there is strong evidence that Congress intended otherwise, the objectionable provision can be excised from the remainder of the statute. In the absence of a severability clause, however, Congress' silence is just that—silence—and does not raise a presumption against severability.

*Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987). Mere legislative silence on the issue of severability may not control the presumption that legislative acts will be enforced to the extent that they are valid.

¶ 15 Part of examining legislative intent is whether the statute, or in this case a constitutional provision, is capable of being enforced without the offending applications. May the valid language be applied to workers not subject to the invalid portions? In our case today, after the invalid portions are removed as to certain workers, Art 23 § 1A states, in part, that:

> No person shall be required, as a condition of employment or continuation of employment, to:
>
>> Become or remain a member of a labor organization;
>>
>> Pay any dues, fees, assessments, or other charges of any kind or amount to a labor organization;

---

**15.** 75 O.S.2001 § 11a states:

§ 11a. Construction of statutes—Severability

In the construction of the statutes of this state, the following rules shall be observed:

1. For any act enacted on or after July 1, 1989, unless there is a provision in the act that the act or any portion thereof or the application of the act shall not be severable, the provisions of every act or application of the act shall be severable. If any provision or application of the act is found to be unconstitutional and void, the remaining provisions or applications of the act shall remain valid, unless the court finds:

a. the valid provisions or application of the act are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or

b. the remaining valid provisions or applications of the act, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

2. For acts enacted prior to July 1, 1989, whether or not such acts were enacted with an

express provision for severability, it is the intent of the Oklahoma Legislature that the act or any portion of the act or application of the act shall be severable unless:

a. the construction of the provisions or application of the act would be inconsistent with the manifest intent of the Legislature;

b. the court finds the valid provisions of the act are so essentially and inseparably connected with and so dependent upon the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or

c. the court finds the remaining valid provisions standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

**16.** Generally, the provisions of a Constitution are construed using the usual rules of statutory construction. *Cowart v. Piper Aircraft Corp.*, 1983 OK 66, 665 P.2d 315, 317. We need not address whether a statutory rule of construction, § 11a, should be applied to construing Art. 23 § 1A pursuant to *Cowart*.

Pay to any charity or other third party, in lieu of such payments, any amount equivalent to or pro rata portion of dues, fees, assessments, or other charges regularly required of members of a labor organization;

Further, that any person who directly or indirectly violates these provisions shall be guilty of a misdemeanor. These provisions are capable of being enforced, as a matter of state law, apart from the preempted language.

¶ 16 In *Potter v. State*, 1973 OK CR 228, 509 P.2d 933, our Court of Criminal Appeals discussed a criminal obscenity statute that created an exemption for certain conduct, specifically, "motion pictures produced or manufactured as commercial motion pictures which (1) have the seal under the Production Code of the Motion Picture Association of America, Inc.," and certain foreign films. *Id.* 509 P.2d at 934. The court determined that the exemption was both invalid and severable from the remainder of the statute. *Id.* 509 P.2d at 935–936.[17] Similarly, we have discussed whether invalid and valid provisions "are so interwoven as to be incapable of distinct separation." *Parwal Inv. Co. v. State*, 1918 OK 498, 175 P. 514, 515.

¶ 17 In our case today, Article 23 § 1A defines certain conduct as constituting a misdemeanor. Similar to *Potter*, the conduct which is preempted does not interfere with enforcing the remainder of the non-preempted portion of Art. 23 § 1A that defines certain other conduct. The provisions listing types of conduct are *not* so interwoven as to be incapable of distinct separation. *Parwal Inv. Co. v. State, supra.*

¶ 18 This Court has indicated that the intent of a legislative body is for its enactments to be enforced in part, unless either a contrary intent is apparent, or the provisions are not capable of separate enforcement. No party has shown an intent of the People that Art. 23 § 1A should not be enforced, at least in part. The non-preempted language of Art. 23 § 1A is capable of being enforced apart from the preempted language.

¶ 19 I would thus answer the two questions in the affirmative. Yes, a severability analysis is required. Yes, the preempted portions are severable from the non-preempted portions. I concur in the Court's result. The non-preempted parts of the Right To Work Amendment are the law of Oklahoma.

---

17. The High Court also uses a severability analysis with federal criminal statutes. *See, e.g., U.S. v. Jackson*, 390 U.S. 570, 572, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), (death penalty provision of the Federal Kidnaping Act was invalid, but severable from the remainder of the statute, and there was "no reason" to invalidate the law in its entirety).