**Thomas Wayne BUKOVAC, Plaintiff,**

v.

**DANIEL CONSTRUCTION COMPANY, a Division of Daniel International Corporation, Defendant.**

**Civ. A. No. 78–0125(H).**

United States District Court, W. D. Virginia, Harrisonburg Division.

April 9, 1979.

§ 401(3) (the procedure suggested in *In Re Liberatore, supra,* at 88 and *n.* 9).

John Appleford, Monterey, Va., for plaintiff.

Bayard Harris, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for defendant.

## MEMORANDUM OPINION and ORDER

DALTON, District Judge.

This suit was brought in the Circuit Court for the County of Bath under Section 40.1–61 of the Code of Virginia, which prohibits employers from making non-membership in a labor union a condition of an employee's employment, and Section 40.1–63, which allows recovery of damages to one denied or deprived of employment in breach of the prior provision.[1] The case was removed to this court under 28 U.S.C. § 1441 on the ground of diversity of citizenship, amount in controversy in excess of $10,000, and the sole defendant not a citizen of Virginia. 28 U.S.C. §§ 1332(a), 1441(b).

Plaintiff, Thomas Wayne Bukovac, worked for the defendant, Daniel Construction Company, a foreign corporation with its main office in Greenville, South Carolina, at the Bath County Pumped Storage project, where defendant is building a hydro-electric facility for the Virginia Electric and Power Company. Plaintiff alleges that he was a member of a local ironworkers union in Washington, D.C. and that he revealed this membership to defendant when he came to work for it in Bath County in May of 1977. He further alleges that during the course of his employment his worksite was the object of repeated union attempts to organize project workers and that defendant's supervisory personnel threatened that any worker who signed a union card would be fired. Bukovac states that he was required to sign a blank piece of paper on or about April 10, 1978, which paper was later modified to represent a confession of misconduct on his part and was used as the basis of his discharge from employment on April 20, 1978. He seeks reinstatement, back wages and damages in excess of $10,000, exclusive of interest and costs.

Defendant, after removing the case to this court, moved to dismiss plaintiff's complaint, first for failure to state a cause of action upon which relief can be granted, and second because Bukovac's claim is pre-empted by the National Labor Relations Act, as amended, 29 U.S.C. §§ 151, et seq., and that the National Labor Relations Board has sole and exclusive jurisdiction over this claim. Assuming, without deciding, that plaintiff has stated a claim under the Virginia statutes, this court must conclude that this claim is pre-empted and must be dismissed upon that basis.

The provisions of law upon which plaintiff bases his claim are part of the Virginia Right to Work Statute, Code of Virginia,

---

1. Code of Virginia, 1950 (Rep.Vol.1976), § 40.1–61 states: "—No person shall be required by an employer to abstain or refrain from membership in any labor union or labor organization as a condition of employment or continuation of employment."

§ 40.1–63 states: "Any person who may be denied employment or be deprived of continuation of his employment in violation of §§ 40.1– 60, 40.1–61 or 40.1–62 or of one or more of such sections, shall be entitled to recover from such employer and from any other person, firm, corporation or association acting in concert with him by appropriate action in the courts of this Commonwealth such damages as he may have sustained by reason of such denial or deprivation of employment."

1950 (Repl.Vol.1976), §§ 40.1–58 et seq.[2] The employer conduct which § 40.1–61 forbids is also proscribed by Section 8(a)(3) of the National Labor Relations Act of 1935, 29 U.S.C. § 158(a)(3), which states in part: "It shall be an unfair labor practice for an employer—. . . (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization. . . ." *See Torrington Co. v. NLRB,* 506 F.2d 1042, 1047 (4th Cir. 1974).

"The doctrine of labor law pre-emption concerns the extent to which Congress has placed implicit limits on 'the permissible scope of state regulation of activity touching upon labor-management relations.' . . There is general agreement on the proposition that the 'animating force' behind the doctrine is a recognition that the purposes of the federal statute would be defeated if state and federal courts were free, without limitation, to exercise jurisdiction over activities that were subject to regulation by the National Labor Relations Board. . . The overriding interest in a uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress not only demands that the NLRB's primary jurisdiction be protected; it also forecloses overlapping state enforcement of the prohibitions of the Act, . . ." *New York Telephone Co. v. New York State Dept. of Labor,* —— U.S. ——, ——, 99 S.Ct. 1328, 1334, 59 L.Ed.2d 553 (1979) (Stevens, J., announcing the court's judgment and delivering an opinion, in which White and Rehnquist, JJ., join).[3] "In *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 [1959], the [Supreme] Court made two statements which have come to be accepted as the general guidelines for deciphering the unexpressed intent of Congress regarding the permissible scope of state regulation

of activity touching upon labor-management relations. The first related to activity which is clearly protected or prohibited by the federal statute. . . .

'When it is clear or may fairly be assumed that the activities which a state purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the states free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress, and requirements imposed by state law.' 359 U.S., at 244, 79 S.Ct. 773."

*Sears, Roebuck & Co. v. Carpenters,* 436 U.S. 180, 187, n. 11, 98 S.Ct. 1745, 1752, 56 L.Ed.2d 209 (1978). The second *Garmon* rule applied pre-emption to activity "arguably subject to § 7 or § 8 of the Act." 359 U.S. at 245, 79 S.Ct. at 780.

Since the decision in *Garmon,* however, the Supreme Court has recognized a number of exceptions to its pre-emption rules. In *New York Telephone, supra.,* it recently held that Congress, in enacting the National Labor Relations Act [NLRA] and the Social Security Act, did not intend to pre-empt a state's power to pay un-employment compensation to strikers. In *Sears, Roebuck & Co., supra.,* the Supreme Court held that the NLRA does not pre-empt a state from applying its trespass laws to regulate the location of peaceful, arguably protected, picketing. The Court held in *Farmer v. Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), that the NLRA does not pre-empt a union member from suing his union in state court for the intentional infliction of emotional distress. In his opinion in that case, Justice Powell listed a number of stat-

---

2. See *Local No. 10, Plumbers Union v. Graham,* 345 U.S. 192, 193, 73 S.Ct. 585, 97 L.Ed. 946 (1953).

3. *See also Sears, Roebuck & Co. v. Carpenters,* 436 U.S. 180, 214, 218, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978) (Brennan, J., dissenting);

*Motor Coach Employees v. Lockridge,* 403 U.S. 274, 286, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); *Weber v. Anheuser-Busch, Inc.,* 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546 (1955); *Garner v. Teamsters Union,* 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953).

utory and judicially developed exceptions to the *Garmon* rule. *Farmer, supra,* at 296–297, 97 S.Ct. 1056. The statutory exceptions included suits under § 303 of the Labor Management Relations Act of 1947 [LMRA], as amended, 29 U.S.C. § 187, for damages to business or property by activity violative of § 8(b)(4) of the NLRA, and suits under § 301 of the LMRA, 29 U.S.C. § 185, arising out of the breach of collective bargaining agreements. In addition, § 14(c)(2) of the NLRA, as added by Title VII, § 701(a) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 164(c)(2), permits state agencies and state courts to assert jurisdiction over any labor dispute, the effect on commerce of which is not sufficiently substantial to warrant the exercise of the jurisdiction of the National Labor Relations Board. No showing has been made by plaintiff that any of these statutory exceptions apply to this case. The judicially created exceptions each involved activity which, in Justice Powell's words, "was a merely peripheral concern of the Labor Management Relations Act . . . [or] touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act . . . " or "where the particular rule of law sought to be invoked before another tribunal is so structured and administered that, in virtually all instances, it is safe to presume that judicial supervision will not disserve the interests promoted by the federal labor statutes." *Farmer v. Carpenters, supra,* at 296–297, and 297, n. 8, 97 S.Ct. at 1062. None of these exceptions apply to the present case either.

Rather, the Virginia statute which plaintiff seeks to invoke is like that pre-empted in *Garner v. Teamsters,* 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953), wherein it was held that organizational picketing which violated the Pennsylvania Labor Relations Act could not be enjoined by an equity court in Pennsylvania because that activity was also arguably in violation of § 8(b)(2) of the NLRA. Since both Federal and state law was aimed at proscribing the same practices, the danger that conflicting remedies might be brought to bear on the same activity precludes either Federal or state courts from intervening in such cases, which are committed to the jurisdiction of the National Labor Relations Board. *See Garner, supra,* at 490–491, 498–499, 74 S.Ct. 161; *Sears, Roebuck & Co., supra,* 436 U.S. at 192–193, 98 S.Ct. 1745.

As the Supreme Court stated in *Sears, Roebuck,* the reasoning of the *Garner* case "has its greatest force when applied to state laws regulating the relations between employees, their union, and their employer." *Sears, Roebuck & Co., supra,* at 193, 98 S.Ct. at 1755. Therefore, despite the continuing erosion of the *Garmon* pre-emption doctrine, its application is still sound and well commanded in this case. Therefore, defendant's motion to dismiss is granted, and this case is ORDERED dismissed on this ground.[4]

---

4. It has been suggested that Congress has allowed for concurrent state-federal jurisdiction in this "right-to-work" area by § 14(b) of the LMRA (the Taft-Hartley Act), 29 U.S.C. § 164(b). That section, pertaining to union security agreements, "obviously has no relevancy to the provisions" of § 40.1–61. *Beasley v. Food Fair of North Carolina,* 416 U.S. 653, 662 n. 7, 94 S.Ct. 2023, 2028, 40 L.Ed.2d 443 (1974).