**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 13 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

LOCAL 514 TRANSPORT
WORKERS UNION OF AMERICA;
LOCAL 627 INTERNATIONAL
UNION OF OPERATING
ENGINEERS; LOCAL LODGE 898
INTERNATIONAL ASSOCIATION
OF MACHINISTS AND
AEROSPACE WORKERS; LOCAL
584 INTERNATIONAL
ASSOCIATION OF BRIDGE,
STRUCTURAL, ORNAMENTAL
AND REINFORCING IRON
WORKERS; LOCAL 916 AMERICAN
FEDERATION OF GOVERNMENT
EMPLOYEES; LOCAL 1358
NATIONAL ASSOCIATION OF
LETTER CARRIERS; LOCAL 1558
INTERNATIONAL UNION, UNITED
AUTO, AEROSPACE AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA;
OKLAHOMA STATE AFL-CIO;
EDWARDS PIPELINE SERVICES,
INC.,

        Plaintiffs - Appellants,

    v.

FRANK KEATING, Governor of the
State of Oklahoma,

        Defendant - Appellee,

No. 02-7077

OKLAHOMANS FOR JOBS AND
JUSTICE, INC.; KENT DUVALL;
MICHELLE McKENZIE; STEPHEN
WEESE,

Defendants-Intervenors-
Appellees.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. NO. 01-CV-633-S)**

---

Laurence E. Gold, AFL-CIO, Washington, D.C. (James E. Frasier, Steven R.
Hickman, Frasier, Frasier & Hickman, Tulsa, Oklahoma; Gene Stipe, Eddie
Harper, Stipe Law Firm, McAlester, Oklahoma; and Gerald B. Ellis, Tulsa,
Oklahoma, with him on the brief) for Plaintiffs-Appellants.

John N. Hermes, McAfee & Taft, Oklahoma City, Oklahoma (D. Kent Meyers,
Mary H. Tolbert, Crowe & Dunlevy, Oklahoma City, Oklahoma, with him on the
brief) for Defendants-Appellees Frank Keating and Oklahomans for Jobs and
Justice, Inc.

John R. Martin, National Right to Work Legal Defense Foundation, Inc.,
Springfield, Virginia, for Defendants-Appellees Kent Duvall, Michelle McKenzie
and Stephen Weese.

---

Before **SEYMOUR**, **PORFILIO**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

Plaintiffs filed a complaint in district court seeking a declaration that numerous provisions of article XXIII, § 1A of the Oklahoma Constitution were preempted by federal law and that any remaining non-preempted provision was not severable from the preempted provisions. The district court concluded as follows: (1) the only provisions of article XXIII, § 1A that were preempted by federal labor law were §§ 1A(B)(5) and 1A(C); and (2) §§ 1A(B)(5) and 1A(C) were severable from the remaining portions of article XXIII, § 1A.

Plaintiffs appealed to this court contending that the district court erred in concluding that § 1A(B)(1) is not preempted by federal law and that §§ 1A(B)(1), 1A(B)(5), and 1A(C) are severable from the remaining portions of article XXIII, § 1A. In an order certifying questions of state law to the Oklahoma Supreme Court,[1] this court first held that the district court had erred in concluding § 1A(B)(1) is not preempted by federal law. We further held that § 1A(E) was also preempted to the extent that it enforced the provisions of §§ 1A(B)(1), 1A(B)(5), and 1A(C). Having so held, this court certified the following two questions to the Oklahoma Supreme Court:

> 1. Is severability analysis required in light of the preemption of article XXIII, § 1A(B)(1), § 1A(B)(5), § 1A(C), and § 1A(E) (insofar as it enforces § 1A(B)(1), § 1A(B)(5), and § 1A(C)) as to

---

[1] This court's Certification of Questions of State Law is attached to, and made a formal part of this published opinion.

workers covered by the NLRA, as opposed to the "invalidation" of those provisions?

2. If severability analysis is appropriate, are § 1A(B)(1), § 1A(B)(5), § 1A(C), and § 1A(E) (insofar as it enforces § 1A(B)(1), § 1A(B)(5), and § 1A(C)) severable from the non-preempted portions of § 1A?

In a published opinion issued on December 16, 2003, the Oklahoma Supreme Court answered the first question in the negative, thereby rendering the second question moot. *Local 514 Transp. Workers Union of Am. v. Keating*, No. 99,178, 2003 WL 22952807, at *1, *3-*4, *11 (Okla. Sup. Ct. Dec. 16, 2003). In holding that a severability analysis was not necessary, the Oklahoma Supreme Court concluded as follows:

> First, we note that whether to apply severability analysis here is a matter of state law. With respect to whether severability analysis is required here, we think it only logical to extend the trial court's analysis concerning the Railway Labor Act, the Civil Service Reform Act, the Postal Reorganization Act, and federal enclaves to those sections of the right to work amendment that have been held to be preempted by the Labor Management Relations Act and the National Labor Relations Act. Consequently, we hold that the right to work amendment contemplates that certain of its provisions might not operate under certain conditions because of the Labor Management Relations Act and the National Labor Relations Act, just as the trial court held that the right to work amendment contemplated that it would not apply to employees covered by the Railway Labor Act, the Civil Service Reform Act, or the Postal Reorganization Act, and had no application to federal enclaves, such as military bases. Thus, severability analysis is not necessary.
>
> Our conclusion that severability analysis is unnecessary is buttressed by the fact that the Oklahoma right to work law applies to state and local government workers and agricultural workers, regardless of its preemption by federal law with respect to certain

-4-

classes of employees in certain situations. Plaintiffs argue that this is not important because state employees are currently not subject to security agreements because of legislation. Based on this fact, plaintiffs claim that the right to work law provides no new protections to state workers. But the right to work law is a constitutional amendment, so it will protect state employees from any legislative changes that might otherwise be made to labor laws governing public employees. Thus, the right to work law provides a significant additional protection to public employees.

*Id.* at *4.[2]

Based on the Oklahoma Supreme Court's answer to this court's certified questions, the judgment of the United States District Court for the Eastern District of Oklahoma is hereby **AFFIRMED**.[3]

---

[2]Although all nine Justices of the Oklahoma Supreme Court concluded that the non-preempted provisions of article XXIII, § 1A remained valid, three of the Justices believed that a severability analysis was necessary to reach that result. *Local 514 Transp. Workers Union of Am. v. Keating*, No. 99,178, 2003 WL 22952807, *9-*13 (Okla. Sup. Ct. Dec. 16, 2003) (Summers, J., concurring in the result).

[3]In this court's Certification of Questions of State Law, we addressed the Plaintiffs' contention that § 1A(B)(1) is preempted by federal law. We did so for the narrow purpose of resolving Plaintiffs' contention that the entirety of article XXIII, § 1A is invalid because several of its key provisions are preempted by federal law. In their complaint, however, Plaintiffs did not ask the district court to separately declare that § 1A(B)(1) is preempted. This fact, coupled with the Oklahoma Supreme Court's conclusion that it is not necessary to conduct a severability analysis to conclude that the remaining portions of article XXIII, § 1A are valid despite the preemption of some provisions, makes it unnecessary to alter in any way the district court's judgment.

F I L E D
United States Court of Appeals
Tenth Circuit

APR 24 2003

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LOCAL 514 TRANSPORT
WORKERS UNION OF AMERICA;
LOCAL 627 INTERNATIONAL
UNION OF OPERATING
ENGINEERS; LOCAL LODGE 898
INTERNATIONAL ASSOCIATION
OF MACHINISTS AND
AEROSPACE WORKERS; LOCAL
584 INTERNATIONAL
ASSOCIATION OF BRIDGE,
STRUCTURAL, ORNAMENTAL
AND REINFORCING IRON
WORKERS; LOCAL 916 AMERICAN
FEDERATION OF GOVERNMENT
EMPLOYEES; LOCAL 1358
NATIONAL ASSOCIATION OF
LETTER CARRIERS; LOCAL 1558
INTERNATIONAL UNION, UNITED
AUTO, AEROSPACE AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA;
OKLAHOMA STATE AFL-CIO;
EDWARDS PIPELINE SERVICES,
INC.,

          Plaintiffs-Appellants,

v.

FRANK KEATING, Governor of the
State of Oklahoma,

          Defendant-Appellee,

No. 02-7077
(D.C. No. 01-CV-633-S)
(E.D. Okla.)

OKLAHOMANS FOR JOBS AND
JUSTICE, INC.; KENT DUVALL;
MICHELLE McKENZIE; STEPHEN
WEESE,

        Defendants-Intervenors-
        Appellees.

---

## CERTIFICATION OF QUESTIONS OF STATE LAW

---

Before **SEYMOUR**, **PORFILIO**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.  INTRODUCTION

Plaintiffs[1] filed a complaint in the United States District Court for the

Eastern District of Oklahoma seeking a declaration that numerous provisions of

article XXIII, § 1A of the Oklahoma Constitution were preempted by federal law

and that any remaining non-preempted provisions of § 1A were not severable

from the preempted provisions.  Although the district court concluded that the

majority of the provisions of article XXIII, § 1A were not preempted by the

---

[1]Plaintiffs are a group of eight "labor organizations" within the meaning of Okla. Const. art. XXIII, § 1A(A) and an employer who is a party to a collective bargaining agreement containing provisions which cannot be included in future collective bargaining agreements pursuant to the terms of article XXIII, § 1A.

relevant federal labor laws, it did conclude that § 1A(B)(5) and § 1A(C) were preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.* Having so determined, the district court proceeded to analyze whether the non-preempted portions of § 1A were severable from § 1A(B)(5) and § 1A(C). The district court concluded that the core provisions of article XXIII, § 1A were contained in § 1A(B)(1)-(4) and, applying Okla. Stat. tit. 75, § 11a and its presumption of severability, further concluded that the invalidation of § 1A(B)(5) and § 1A(C) would not hinder the enforcement of those core provisions. Accordingly, the district court determined that § 1A(B)(5) and § 1A(C) were severable from the remaining portions of § 1A.

Plaintiffs bring the instant appeal challenging two aspects of the district court's decision. First, they contend the district court erred in concluding that § 1A(B)(1) is not preempted by federal labor law. Second, they assert the district court erred in determining that § 1A(B)(5) and § 1A(C) are severable from the remainder of § 1A and, in any event, the additional preemption of § 1A(B)(1) clearly tips the balance in favor of non-severability.[2]

_____

[2]Plaintiffs acknowledge that if this court were to reverse the district court's determination that § 1A(B)(1) is not preempted by federal labor law, the question of severability under Oklahoma law would arise from a legal premise not considered by the district court. In such an event, however, they urge this court to exercise its discretion to reach the severability issue on the merits rather than remanding to the district court. *Cf., e.g.*, *Elec. Distrib., Inc. v. SFR, Inc.*, 166 F.3d 1074, 1083-86 (10th Cir. 1999) (rejecting district court decision to apply

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court holds as follows: (1) plaintiffs have standing to assert that article XXIII, § 1A(B)(1) is preempted by federal law as part of their claim that the entirety of § 1A is void; and (2) § 1A(B)(1) is preempted by the NLRA. Having so concluded, we certify to the Oklahoma Supreme Court the question whether § 1A(B)(1), § 1A(B)(5), and § 1(C) are severable from the remaining, non-preempted portions of § 1A. *See* 10th Cir. R. 27.1; Okla. Stat. tit. 20, §§ 1601-1611.

## II. BACKGROUND

In April 2001, the Senate and House of Representatives of the First Session of the 48th Oklahoma Legislature approved Senate Joint Resolution No. 1, which directed the Oklahoma Secretary of State to "refer to the people for their approval or rejection" a proposed amendment to article XXIII of the Oklahoma Constitution. A special election was subsequently arranged for the sole purpose of voting on the proposed amendment, denominated State Question No. 695 ("SQ 695"). The ballot title described SQ 695 as follows:

> The measure adds a new section to the State Constitution. It adds Section 1A to Article 23. The measure defines the term "labor organization." "Labor organization" includes unions. That term also includes committees that represent employees.

---

Colorado law rather than Utah law and then applying Utah choice of law principles to issue on appeal without remanding to the district court for it to do so in first instance). Our determination *infra* to certify the severability question to the Oklahoma Supreme Court renders these considerations moot.

-4-

The measure bans new employment contracts that impose certain requirements to get or keep a job. The measure bans contracts that require joining or quitting a labor organization to get or keep a job. The measure bans contracts that require remaining in a labor organization to get or keep a job. The measure bans contracts that require the payment of dues to labor organizations to get or keep a job. The measure bans contracts that require other payments to labor organizations to get or keep a job. Employees would have to approve deductions from wages paid to labor organizations. The measure bans contracts that require labor organization approval of an employee to get or keep a job.

The measure bans other employment contracts. Violation of this section is a misdemeanor.

SQ 695 Ballot Text, http://www.state.ok.us/%7Eelections/sq695txt.html. On September 25, 2001, the Oklahoma electorate approved SQ 695 by a vote of 447,072 to 378,465; article XXIII, § 1A became effective on September 28, 2001.[3]

---

[3]Article XXIII, § 1A provides as follows:
A. As used in this section, "labor organization" means any organization of any kind, or agency or employee representation committee or union, that exists for the purpose, in whole or in part, of dealing with employers concerning wages, rates of pay, hours of work, other conditions of employment, or other forms of compensation.
B. No person shall be required, as a condition of employment or continuation of employment, to:
    1. Resign or refrain from voluntary membership in, voluntary affiliation with, or voluntary financial support of a labor organization;
    2. Become or remain a member of a labor organization;
    3. Pay any dues, fees, assessments, or other charges of any kind or amount to a labor organization;
    4. Pay to any charity or other third party, in lieu of such

Shortly after the constitutional amendment went into effect, plaintiffs filed a complaint in federal court seeking, *inter alia*, a declaration that numerous provisions of article XXIII, § 1A were preempted by federal labor law and that the entirety of § 1A was unenforceable because the non-preempted provisions were not severable from the preempted provisions. *Local 514, Transp. Workers Union of Am. v. Keating*, 212 F. Supp. 2d 1319, 1322-23 (E.D. Okla. 2002) (setting out eleven counts in plaintiffs' amended complaint). The parties agreed to have the district court resolve the matter on cross-motions for summary judgment. In resolving the case, the district court made the following key rulings:

1. The district court rejected the contention that article XXIII, § 1A was preempted as applied to federal enclave employees[4] and employees covered by the

> payments, any amount equivalent to or pro rata portion of dues, fees, assessments, or other charges regularly required of members of a labor organization; or
> 5. Be recommended, approved, referred, or cleared by or through a labor organization.
> C. It shall be unlawful to deduct from the wages, earnings, or compensation of an employee any union dues, fees, assessments, or other charges to be held for, transferred to, or paid over to a labor organization unless the employee has first authorized such deduction.
> D. The provisions of this section shall apply to all employment contracts entered into after the effective date of this section and shall apply to any renewal or extension of any existing contract.
> E. Any person who directly or indirectly violates any provision of this section shall be guilty of a misdemeanor.

[4]Plaintiffs identified two federal enclaves in their amended complaint: Vance Air Force Base in Enid, Oklahoma, and Tinker Air Force Base in Oklahoma City, Oklahoma.

Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7101 *et seq.*, and the Postal Reorganization Act ("PRA"), 39 U.S.C. § 1201 *et seq. Local 514*, 212 F. Supp. 2d at 1324-26. The district court concluded instead that § 1A simply did not apply to individuals subject to regulation under the RLA, CSRA, PRA, or those employed in a federal enclave. *Id.* at 1326. It noted that from this conclusion "it follows that the preemption suggested by Plaintiffs with respect to these individuals has no application to any portion of Oklahoma's right-to-work law." *Id.*

2. The district court rejected plaintiffs' contention that article XXIII, § 1A(B)(1) is preempted by the NLRA/LMRA. *Id.* at 1327 n.6. Plaintiffs argued before the district court that 29 U.S.C. § 164(b), the provision of the LMRA giving states the right to enact right-to-work laws, only gives states the power to prevent employers from *requiring* union membership as a condition of employment, not the authority to prevent employers from *prohibiting* union membership as a condition of employment. *Id.* Citing *Lincoln Federal Labor Union 19129 v. Northwestern Iron & Metal Co.*, 335 U.S. 525 (1949), the district court concluded that the Supreme Court "has upheld state right-to-work laws which prohibit discrimination in employment based on both union membership and non-membership alike." *Local 514*, 212 F. Supp. 2d at 1327 n.6.

3.  The district court concluded that § 1A(B)(5) and § 1A(C) are preempted by the NLRA/LMRA.  *Id.* at 1326-27.[5]

4.  Having concluded that § 1A(B)(5) and § 1A(C) were preempted, the district court moved on to the question whether these provisions were severable from the remainder of § 1A.  The district court began by noting that severability is a question of state law.  *Id.* at 1328 (citing *Panhandle E. Pipeline Co. v. Oklahoma ex rel. Comm'rs of the Land Office*, 83 F.3d 1219, 1229 (10th Cir. 1996)).  According to the district court, the applicable state law on severability was that set out in Okla. Stat. tit. 75, § 11a.  *Id.*  Section 11a establishes a presumption of severability.  *See* Okla. Stat. tit. 75, § 11a (providing that "the provisions of every act or application of the act shall be severable" unless the act contains a non-severability clause).  Pursuant to § 11a, the district court concluded that the valid provisions of § 1A were separable from the preempted provisions because:

> The core provisions of Oklahoma's right-to-work law can be found in subsections (B)(1) through (4), which ban union and agency shop provisions in collective bargaining agreements.  These provisions are certainly capable of being carried out in the absence of subsections (B)(5) and (C), which deal with exclusive hiring halls and check-off arrangements.  The core provisions of Article 23, § 1A are not dependent on the invalid provisions to give them meaning and effect.

---

[5]In light of this determination, which defendants have not appealed, § 1A(E) is also preempted to the extent that it imposes criminal penalties for the violation of § 1A(B)(5) and § 1A(C).

The core provisions are capable of being executed without subsections (B)(5) and (C) being in effect. In sum, there is no interconnection or interdependence between the valid and invalid provisions of the law. Thus, it is certainly true to say that the law's core provisions banning union and agency shops would have been enacted notwithstanding the absence of the invalid provisions prohibiting exclusive hiring halls and regulating check-off arrangements.

. . . .

With respect to Oklahoma's right-to-work law, it is clear that the overriding purpose of the law was to ensure that employment was not conditioned upon one's membership in, voluntary affiliation with, or financial support of a labor organization or on a refusal to join, affiliate, or financially support a labor organization. Enforcement of the core provisions of the law which carry out this undeniable purpose is in no way hindered by the court's invalidation of the subsidiary provisions of subsections (B)(5) and (C). Consequently, the invalid provisions of Article 23, § 1A are severable from the core provisions and the remainder of Oklahoma's right-to-work law is upheld.

*Local 514*, 212 F. Supp. 2d at 1329, 1331.

## III. DISCUSSION

*A. Preemption of § 1A(B)(1)*

*1. Standing*

Article XXIII, § 1A(B)(1) provides that "No person shall be required, as a condition of employment or continuation of employment, to . . . [r]esign or refrain from voluntary membership in, voluntary affiliation with, or voluntary financial support of a labor organization." Defendants assert that none of the plaintiffs have standing to challenge the validity of § 1A(B)(1) because there is no

indication in the record that § 1A(B)(1) could ever apply to any of them.[6]  In particular, defendants assert that there is no indication in the record that the union plaintiffs intend to become parties to collective bargaining agreements which prohibit individuals, as a condition of employment or continuation of employment, from joining, associating with, or providing financial support to a labor organization.[7]  Likewise, defendants note that the only allegation in the record regarding the standing of plaintiff Edwards Pipeline is the following: "Edwards Pipeline is a party to a collective bargaining agreement . . . that contains provisions governing payroll deductions and hiring hall and referral procedures that SQ 695 purports to outlaw in any renewal of this agreement." Defendants recognize that this allegation establishes Edwards Pipeline's standing to challenge § 1A(B)(5) and § 1A(C).  They argue, however, that it fails to

---

[6]As noted by plaintiffs, defendants raise this question of justiciability for the first time on appeal.  Nevertheless, this court is under a continuing obligation to examine both its own jurisdiction and the jurisdiction of the district court, whether or not raised by the parties.  *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-31 (1990) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it. . . .  And if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it." (alteration in original) (internal citation and quotations omitted)).

[7]*See* Keating Brief at 19 ("Overlooking the sheer absurdity of such a term existing *in a collective bargaining agreement*, it is clear that the Labor Plaintiffs have failed to advance sufficient factual allegations to demonstrate that they are subject to Subsection (B)(1)'s strictures.").

establish that Edwards Pipeline is presently or will likely in the future be affected by § 1A(B)(1).

In support of its assertion that none of the plaintiffs have standing to challenge § 1A(B)(1), defendants rely heavily on the Supreme Court's decision in *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990). In *FW/PBS*, the Supreme Court analyzed an ordinance which "regulat[ed] sexually oriented businesses through a scheme incorporating zoning, licensing, and inspections." *Id.* at 220-21. A majority of the Court concluded that the licensing scheme was unconstitutional because it did not provide adequate procedural safeguards as required by *Freedman v. Maryland*, 380 U.S. 51 (1965). *FW/PBS*, 493 U.S. at 229 (plurality opinion); *id.* at 238 (Brennan, J., concurring). Despite the fact that the Court had invalidated the entire licensing scheme, it nevertheless vacated the judgment of the Fifth Circuit Court of Appeals invalidating two specific subsections of that same scheme because there was no indication in the record that any of the plaintiffs were affected by those particular subsections. *See id.* at 231-36. In so doing, the Court noted that it had an ongoing obligation to examine in every case on review whether the lower court had jurisdiction to entertain a particular claim. *Id.* at 231.

Relying on *FW/PBS*, defendants argue that merely because plaintiffs have standing to challenge some provisions of article XXIII, § 1A, does not mean that

-11-

they have standing to challenge all portions of § 1A. This court does not necessarily disagree with defendants' abstract statement of the law. It appears, however, that defendants have stated a rule of law in search of a case.

To satisfy the Constitution's case-or-controversy requirement, plaintiffs must demonstrate that they have suffered an "injury in fact" that is fairly traceable to the challenged action of the defendant and that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Importantly, plaintiffs' standing must be analyzed with reference to the particular claim they are asserting. *See Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991) ("Standing does not refer simply to a party's capacity to appear in court. Rather, standing is gauged by the specific common-law, statutory or constitutional claims that a party presents."). Accordingly, this court must examine the particular claim asserted by plaintiffs to determine whether they have standing.

Plaintiffs are directly aggrieved by article XXIII, § 1A(B)(2)-(4), those portions of § 1A that proscribe union security agreements. Plaintiffs specifically claimed in their complaint that because SQ 695 does not contain a severability clause and is not otherwise severable, and because substantial portions of it are federally preempted, article XXIII, § 1A is invalid in its entirety. Plaintiffs'

-12-

assertion that § 1A(B)(1) is preempted by the NLRA is but a step in its argument that § 1A in its totality, specifically including § 1A(B)(2)-(4), is invalid. Plaintiffs' claim is thus not a stand-alone challenge to § 1A(B)(1), but a broader challenge to § 1A.

This case, then, is similar to *Catholic Social Services v. Shalala*, 12 F.3d 1123, 1125-26 (D.C. Cir. 1994). In *Shalala*, a group of home health care providers challenged a Medicare cost-limit rule promulgated by the Secretary of Health and Human Services. *Id.* at 1124. The portion of the rule at issue, a provision that made the cost-limit rule retroactively applicable, did not affect any of the plaintiffs. *Id.* at 1124-25. The D.C. Circuit concluded that the plaintiffs nevertheless had standing because their challenge did not run to the retroactivity provision *qua* retroactivity provision, but instead was an assertion that the inclusion of the provision rendered the entire cost-limit rule void *ab initio*. *Id.* at 1125-26. In these circumstances, the D.C. Circuit concluded that the plaintiffs had "been quite deft in fashioning their claim so as to establish standing." *Id.* at 1125.

Plaintiffs have presented the same conceptual link between their argument concerning § 1A(B)(1) and the overall validity of article XXIII, § 1A as did the plaintiffs in *Shalala*. Plaintiffs have demonstrated that they have an injury in fact attributable to § 1A(B)(2)-(4) and that a favorable decision that § 1A is non-

-13-

severable and void in its entirety will redress that injury. Thus, plaintiffs' claims regarding § 1A(B)(1) are justiciable even if plaintiffs could not bring a distinct claim seeking relief only in relation to that provision.

*2. Merits*

In rejecting plaintiffs' contention that article XXIII, § 1A(B)(1) is preempted by the NLRA, the district court simply noted that the "Supreme Court has upheld state right-to-work laws which prohibit discrimination in employment based on both union membership and non-membership alike." *Local 514*, 212 F. Supp. 2d at 1327 n.6 (citing *Lincoln Fed. Labor Union 19129 v. Northwestern Iron & Metal Co.*, 335 U.S. 525 (1949)). Plaintiffs argue that *Lincoln Federal* is not a preemption case at all and is irrelevant to the question whether § 1A(B)(1) is preempted by the NLRA. They further argue federal courts have uniformly held that state statutes similar to § 1A(B)(1) are preempted by the NLRA. Defendants, on the other hand, contend that the district court correctly relied on *Lincoln Federal* in concluding that § 1A(B)(1) is not preempted. This court reviews the district court's preemption decision *de novo*. *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 989 (10th Cir. 1999).

Article XXIII, § 1A(B)(1), together with § 1A(E), prohibit and make it a misdemeanor for an employer to require as a condition of employment that any person "[r]esign or refrain from voluntary membership in, voluntary affiliation

-14-

with, or voluntary financial support of a labor organization." Similarly, the NLRA makes it an "unfair labor practice" for an employer "to interfere with, restrain, or coerce employees" in the exercise of certain fundamental statutory rights, including the right to "form, join, or assist labor organizations"; bargain collectively; and "engage in other concerted activities." 29 U.S.C. §§ 157, 158(a)(1). The National Labor Relations Board ("NLRB") is empowered "to prevent any person from engaging in any unfair labor practice." *Id.* § 160. The question, therefore, is whether the NLRA, which vests in the NLRB the power to remedy the unfair labor practice of discriminating against union employees or supporters, preempts § 1A(B)(1) and § 1A(E). It is clear from the Supreme Court's decision in *Garner v. Teamsters, Chauffeurs & Helpers Local Union 776*, 346 U.S. 485 (1953), that the answer to that question is "yes."

In *Garner*, the Court held that the NLRA preempted a state statute which declared it to be an unfair labor practice for an employer "[b]y discrimination in regard to hire or tenure of employment, or any term or condition of employment to encourage or discourage membership in any labor organization." *Id.* at 487 n.3. The Court determined that "Congress has taken in hand this particular type of controversy" and

> confide[d] primary interpretation and application of [a set of substantive rules embodied in the NLRA] to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision,

including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid [the] diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies.

*Id.* at 488, 490. Accordingly, the Court made clear that the states could not adopt supplementary or alternative remedies to those set out in the NLRA. *Id.* at 498-99 ("[W]hen two separate remedies are brought to bear on the same activity, a conflict is imminent."); *id.* at 501 (noting that although Congress could allow, as it sees fit, alternative or supplemental state remedies for the commission of unfair labor practices, it had not done so in the context of 29 U.S.C. § 158).[8] Because article XXIII, § 1A(B)(1) operates within the same sphere as 29 U.S.C. §§ 157 and 158(a)(1), and because § 1A(E) provides for criminal enforcement, a remedy different from the remedy specified in the NLRA, § 1A(B)(1)[9] is preempted under

---

[8]The Supreme Court reaffirmed and amplified *Garner* in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959), again holding that the states cannot regulate activities clearly protected or prohibited by the NLRA.

> To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. . . . [T]o allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes.

*Id.* at 244; *see also id.* at 247 ("[S]ince remedies form an ingredient of any integrated scheme of regulation, to allow the State to grant a remedy [] which has been withheld from the [NLRB] only accentuates the danger of conflict.").

[9]*See supra* n.5.

-16-

the Supreme Court's decisions in *Garner* and *Garmon*. *See Friendly Soc'y of Engravers & Sketchmakers v. Calico Engraving Co.*, 238 F.2d 521, 523-25 (4th Cir. 1956) (relying on *Garner* to hold preempted portion of South Carolina right-to-work act substantially similar to article XXIII, § 1A(B)(1)); *Bukovac v. Daniel Constr. Co.*, 469 F. Supp. 176, 177, 179 (W.D. Va. 1979) (same with regard to Virginia Right-To-Work Statute); *see also Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 193 (1978) (holding that the preemption analysis set out in *Garner* and *Garmon* "has its greatest force when applied to state laws regulating the relation between employees, their union, and their employer").[10]

The district court did not cite *Garner* or *Garmon*. Instead, it relied exclusively on *Lincoln Federal Labor Union 19129 v. Northwestern Iron & Metal Co.*, 335 U.S. 525 (1949), for the proposition that the Supreme Court "has upheld state right-to-work laws which prohibit discrimination in employment based on both union membership and non-membership alike." *Local 514*, 212 F. Supp. 2d

---

[10]Plaintiffs argue at length in their opening brief that § 14(b) of the LMRA, 29 U.S.C. § 164(b), which allows states to prohibit "the execution or application of agreements requiring membership in a labor organization as a condition of employment," does not bear on the question of whether article XXIII, § 1A(B)(1) is preempted by the NLRA. The district court did not rely on § 164(b) in concluding that § 1A(B)(1) is not preempted and defendants do not assert that § 164(b) is an alternative basis upon which this court can affirm the district court. Accordingly, this court does not address the question.

-17-

at 1327 n.6.  Defendants likewise rely exclusively on *Lincoln Federal* and its companion case, *American Federation of Labor v. American Sash & Door Co.*, 335 U.S. 538 (1949), to support the district court's conclusion that article XXIII, § 1A(B)(1) is not preempted by the NLRA.  Both the district court and defendants read far too much into *Lincoln Federal* and *American Sash*.

In *Lincoln Federal*, union members offered up a two-pronged challenge to laws from North Carolina and Nebraska that prohibited discrimination against non-union members.  335 U.S. at 527-29.  First, the union members contended that the provisions outlawing union security agreements weakened unions and, at the same time, strengthened the bargaining position of employers.[11]  *Id.* at 532.  Although recognizing that "this may be true," the court concluded as follows regarding the corollary inclusion of protections for union members in the relevant state laws: "This circumstance alone, without regard to others that need not be

---

[11]*Lincoln Federal Labor Union 19129 v. Northwestern Iron & Metal Co.*, 335 U.S. 525, 528-29 ("These state laws were given timely challenge . . . on the ground that insofar as they attempt to protect non-union members from discrimination, the laws are in violation of rights guaranteed employers, unions, and their members by the United States Constitution. . . .  It [is] contended that the state laws . . . deprived the appellant unions and employers of equal protection . . . ." (footnote omitted)); *id.* at 532 ("It is contended that the [state] laws deny unions and their members equal protection of the laws and thus offend the equal protection clause of the Fourteenth Amendment.  Because the outlawed contracts are a useful incentive to the growth of union membership, it is said that these laws weaken the bargaining power of unions and correspondingly strengthen the power of employers.").

-18-

mentioned, is sufficient to support the state laws against a charge that they deny equal protection to unions as against employers and non-union workers." *Id.* Second, the union members contended that the level of protection afforded union members was inferior to the protection afforded non-union employees. *Id.* The court rejected this contention outright, noting that other contentions made by the union members demonstrated that there was simply no factual basis for this assertion. *Id.* at 532-33.

Similarly, in *American Sash*, the Court rejected a challenge to an Arizona right-to-work scheme that allegedly lacked mutuality between the protections afforded union members and non-union employees. 335 U.S. at 540-41. The Court simply noted that it was "unable to find any indication that Arizona's amendment and statutes are weighted on the side of non-union as against union workers." *Id.* at 541. The Court went on to note, however, the following:

> In *National Labor Relations Board v. Jones & Laughlin Steel Corp.*, [301 U.S. 1 (1937)], this Court considered a challenge to the National Labor Relations Act on the ground that it applied restraints against employers but did not apply similar restraints against wrongful conduct by employees. We there pointed out, [301 U.S. at 46], the general rule that "legislative authority, exerted within its proper field, need not embrace all the evils within its reach." And concerning state laws we have said that the existence of evils against which the law should afford protection and the relative need of different groups for that protection "is a matter for the legislative judgment." *West Coast Hotel Co. v. Parrish*, [300 U.S. 379, 400 (1937)].

*American Sash*, 335 U.S. at 541-42.

-19-

It is readily apparent that the Court in *Lincoln Federal* and *American Sash* was focused on the very narrow question of whether the state provisions at issue violated the Equal Protection Clause of the Fourteenth Amendment. There is absolutely no discussion of the question of preemption and, hence, no indication that provisions like article XXIII, § 1A(B)(1) are not preempted by the NLRA.[12] In fact, the Supreme Court made clear in *Railway Employees' Department v. Hanson*, 351 U.S. 225 (1956), that it does not view *Lincoln Federal* and *American Sash* as preemption cases. In *Hanson*, the court rejected a Fifth Amendment challenge to the RLA's preclusion of state right-to-work laws, as applied to workers covered by the RLA, and confirmed Congress' authority to legislate and preempt state laws. *Id.* at 232-33. In so doing, the Court attributed to *Lincoln Federal* and *American Sash* the narrow principle that a state's police powers

---

[12]Both groups of defendants appear to argue that because the NLRA was in existence at the time the Supreme Court decided *Lincoln Federal* and *American Sash*, the Court must have considered and rejected *sub silentio* the very preemption issue before this court. *See* Keating Brief at 40 n.12 ("Both Section 7 and Section 8(a)(1) [of the NLRA] were enacted in 1935, well before the decision in *Lincoln Federal* and *American Sash & Door*. The preemptive effect of these statutes was therefore ripe for consideration had the parties or the Court believed the issues applicable."); Intervenors Oklahomans For Jobs and Justice, Inc. *et al.* Brief at 6-7 (arguing that both NLRA and LMRA were in existence at time Court decided *Lincoln Federal* and *American Sash* and that the Court must have been "well aware of the existing federal right to join and support unions" at the time it decided *Lincoln Federal* and *American Sash*). This contention lacks merit. Under defendants' theory, we would have to read every opinion of the Supreme Court as addressing and rejecting *sub silentio* and *sua sponte* every possible argument *that could have potentially been made* by the parties on appeal.

extend to this arena only "[i]n the absence of conflicting federal legislation." *Id.* at 233

Nor can *Lincoln Federal* and *American Sash* be read to stand for the proposition that the Equal Protection Clause of the Fourteenth Amendment requires the states to adopt measures similar to § 1A(B)(1) if they choose to enact right-to-work laws. The Court was not required to reach this ultimate question because the state schemes at issue in both cases provided mutuality of protection. *Lincoln Federal*, 335 U.S. at 532-33; *American Sash*, 335 U.S. at 541. Furthermore, the Court took great pains in *American Sash* to make clear that the relative need for protection against discrimination of union and non-union workers "is a matter of legislative judgment." 335 U.S. at 542 (quotation omitted). Moreover, we note that neither union nor non-union status implicates a fundamental right or constitutes a protected class, so that a statute which addresses or favors one group over another need only reflect a rational basis. *See, e.g., City of Charlotte v. Local 660, Int'l Ass'n of Firefighters*, 426 U.S. 283, 286 (1976) ("Since it is not here asserted—and this Court would reject such a contention if it were made—that respondents' status as union members . . . is such as to entitle them to special treatment under the Equal Protection Clause . . . ."). Accordingly, for defendants to prevail on their claim that the Fourteenth Amendment mandates mutuality in the treatment of union and non-union workers

-21-

they must demonstrate that it would be irrational for a state to only provide protection against employment discrimination to non-union workers. In light of the federal protection provided to union members under the NLRA, defendants cannot make any such showing. *See Ala. State Fed. of Labor, Local Union No. 103 v. McAdory*, 325 U.S. 450, 472 (1945) (state may, consistent with the Equal Protection Clause, exclude from regulation organizations it has reason to believe are already appropriately regulated by national legislation).

*Garner* and *Garmon* make clear that the NLRA preempts article XXIII, § 1A(B)(1). Furthermore, neither *Lincoln Federal* nor *American Sash* stand for the proposition that the Fourteenth Amendment requires a provision such as § 1A(B)(1) to be a part of every state right-to-work law. Accordingly, the district court's conclusion that § 1A(B)(1) is not preempted by the NLRA is erroneous.[13]

## B. Certification of the Question of Severability to the Oklahoma Supreme Court

### 1. Certification

The United States Court of Appeals for the Tenth Circuit, on its own motion pursuant to 10th Cir. R. 27.1 and Okla. Stat. tit. 20, §§ 1601-1611, hereby certifies to the Oklahoma Supreme Court the following unsettled questions of

---

[13]Section 1A(E) is likewise preempted to the extent that it enforces § 1A(B)(1). *See also supra* n.5 (noting, as a consequence of portions of district court's judgment not appealed by defendants, that § 1A(E) is also preempted to the extent it enforces § 1A(B)(5) and § 1A(C)).

state law which may determine the outcome of the above-captioned action pending before this court:

>1. Is severability analysis required in light of the preemption of article XXIII, § 1A(B)(1), § 1A(B)(5), § 1A(C), and § 1A(E) (insofar as it enforces § 1A(B)(1), § 1A(B)(5), and § 1A(C)) as to workers covered by the NLRA, as opposed to the "invalidation" of those provisions?
>
>2. If severability analysis is appropriate, are § 1A(B)(1), § 1A(B)(5), § 1A(C), and § 1A(E) (insofar as it enforces § 1A(B)(1), § 1A(B)(5), and § 1A(C)) severable from the non-preempted portions of § 1A?

Our statement of the questions is not meant to limit the Oklahoma Supreme Court's inquiry. We acknowledge the Oklahoma Supreme Court's reserved authority to reformulate legal questions presented through the certification procedure. *See* Okla. Stat. tit. 20, §§ 1602.1, 1604(A)(3). In accordance with § 1604(A)(2), we summarized the relevant factual and procedural background above. We summarize below the parties arguments regarding severability and the considerations which guided this court to certify the severability question to the Oklahoma Supreme Court.

The parties are in substantial disagreement as to the content of Oklahoma's law of severability as it applies to constitutional amendments adopted by ballot referendum. Plaintiffs argue that the district court erred by invoking Okla. Stat. tit. 75, § 11a to hold that a presumption of severability applies to article XXIII, § 1A. They note that the Oklahoma Constitution draws a distinction between

-23-

statutes enacted by the Oklahoma Legislature and the process of the Oklahoma

Legislature referring a proposed constitutional amendment to the people for

approval. *Compare* Okla. Const. art. V (defining "Legislative authority," vesting

that authority in the "Legislature," subject to the reservation of certain powers in

the people, and describing the extent of that authority), *with* Okla. Const. art.

XXIV (describing the processes by which the Oklahoma Constitution can be

amended). Nothing in the Oklahoma Constitution, plaintiffs note, classifies the

process of referring a constitutional amendment to the people for approval as an

"act" or statute. In contrast, they argue, Okla. Stat. tit. 75, § 11a, entitled

"Construction of statutes—Severability," sets forth rules for "the construction of

the statutes of this state," and is contained in title 75, which governs "Statutes and

Reports" and otherwise establishes how the Oklahoma Legislature may enact

statutes. Plaintiffs assert that this is the reason the Oklahoma Supreme Court has

never applied Okla Stat. tit. 75, § 11a to a ballot measure or the Oklahoma

Constitution. In sharp contrast to the approach adopted by the district court,

plaintiffs assert that the proper severability analysis is contained in *In re Initiative*

*Petition No. 347*, 813 P.2d 1019, 1030 (Okla. 1991). They assert this case

establishes that the partial invalidation of a ballot measure renders the remainder

of a ballot measure invalid unless "the proposed law contains a severability

provision and the questioned provisions could be eliminated without impairing the

effect of the act." *Id.* Because SQ 695 does not contain a severability clause, and because article XXIII, § 1A sets out a unified regulatory scheme, plaintiffs argue that the preemption of portions of § 1A renders the entirety of § 1A invalid.[14]

In response, defendants assert that the preemption of any particular portion of article XXIII, § 1A does not render that provision invalid. Instead, they note that in any case in which an individual was not subject to the primary jurisdiction of the NLRB, Oklahoma could act pursuant to § 1A(B)(1) and § 1A(E).

Assuming severability analysis is appropriate, defendants assert the district court was correct to apply Okla. Stat. tit. 75, § 11a's presumption of severability to article XXIII, § 1A. They note the Oklahoma Supreme Court has specifically stated that the provisions of the Oklahoma Constitution should be "construed using the usual rules of statutory construction." *Cowart v. Piper Aircraft Corp.*, 665 P.2d 315, 317 (Okla. 1983). Accordingly, they contend that *Cowart* mandates

---

[14]Although noting in a footnote in their principal brief that they think the district court's "saving construction of Section 1A to be legally erroneous," plaintiffs did not appeal the district court's conclusion that § 1A does not apply to federal enclave employees and employees covered by the RLA, CSRA, and PRA. Appellant's Brief at 27 n.5; *see also supra* page 5 (discussing district court's conclusion regarding reach of article XXIII, § 1A). Plaintiffs assert, however, that the inapplicability of § 1A to these groups of employees bears upon the question of whether "Section 1A is non-severable as to workplaces regulated by the NLRA." *Id.*; *see also id.* ("[F]or purposes of this appeal it matters not whether the inapplicability of Section 1A is a product of preemption or construction."). Whether the non-applicability of § 1A to the classes of employees set out above is relevant to the question of severability inheres in Question 2 which this court respectfully certifies to the Oklahoma Supreme Court.

-25-

the application of Okla. Stat. tit. 75, § 11a to the question of the severability of article XXIII, § 1A. Defendants also assert that there is no special severability standard for ballot measure votes. They distinguish *Initiative Petition 347* on the ground that it relied on a pre-election challenge to an initiative petition. Defendants assert that *Initiative Petition 347* stands only for the limited proposition that when a proposed law contains a severability clause, a challenge to the law will not be considered until the initiative is approved by the voters. According to defendants, the case makes no mention of the consequences had the initiative petition not contained a severability clause.

In light of the divergent lines of state authority potentially applicable to the severability analysis of article XXIII, § 1A, the absence of Oklahoma case law involving the question of severability of a ballot referendum which does not contain a severability clause, and the considerable importance of the issues raised in this case, this court seeks the authoritative guidance of the Oklahoma Supreme Court on the questions articulated above.

### 2. *Procedural Orders Implementing Certification*

We order this appeal abated and further proceedings in this court stayed pending resolution of the questions certified above. We direct the Clerk of this Court to transmit a copy of this certification order to the parties and to forward a copy of this order, together with the parties' briefs (which also display the names

-26-

and addresses of counsel of record, *see* Okla. Stat. tit. 20, § 1604(A)(4)), to the

Oklahoma Supreme Court pursuant to Okla. Stat. tit. 20, § 1603.1.